366 So.2d 1164 (1979)
CITY OF GAINESVILLE, Florida, etc., Appellant,
v.
STATE of Florida, Taxpayers, et al., Appellees.
No. 54281.
Supreme Court of Florida.
January 18, 1979.
J.T. Frankenberger, City Atty., Gainesville, and Law Offices of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for appellant.
Eugene T. Whitworth, State's Atty., and Jonathan F. Wershow and Nancy Y. Selfridge, Gainesville, for appellees.
*1165 BOYD, Justice.
The City of Gainesville brought an action, under chapter 75, Florida Statutes (1977), for the validation of bonds being issued to refund prior bonds and to raise revenue for the expansion of its utility system. The state attorney for the Eighth Judicial Circuit and R.G. Selfridge, a ratepayer of the system, filed answers. The Circuit Court of the Eighth Judicial Circuit rendered a judgment validating the bonds and approving the bond ordinance and indenture of trust pertaining to the bond issue. The state and intervenor appeal from this judgment. The court also imposed certain conditions upon the city in its judgment of validation, and the city appeals from these. We have jurisdiction of the appeals. Art. V, § 3(b)(2), Fla. Const.; § 75.08, Fla. Stat. (1977).
In section 20 of its final judgment,[1] the court concluded that the city is without authority to impose its ten percent surcharge on the electricity bills of customers located outside the city's corporate limits. The court concluded further that the bond ordinance and indenture of trust authorize a transfer of revenues from the utility system to the city's general fund that would result in rates that are not just and equitable. In addition to declaring the surcharge illegal, the court imposed "limitations" on the city's authority to implement the bond issue. That portion of the indenture of trust reserving to the city the power to devote "excess revenues" to any lawful purpose, the court decreed,
must be construed to be limited to amounts received which, when examined by the criteria set by the cases and Florida Statutes 180.13, represent a modest return or reasonable profit to the City on the utility service. The City should look to those cases and Florida Public Service Commission guidelines applicable to ratesetting for investor-owned utilities and the return on investment allowed therein.
... Revenues received from subscribers who are served outside the corporate limits of the City must be segregated and that portion thereof sought to be transferred to the general fund of the City may not exceed the pro rata amount transferred by subscribers within the corporate limits plus any valid surcharge on subscribers outside the corporate limits.
The city contends that the matters addressed in section 20 of the judgment are collateral to these bond validation proceedings, have nothing to do with the validity of the bonds, and have no proper place in the judgment. In section 4.2 of the indenture of trust[2] (the agreement between the city and persons who will purchase its bonds), the city makes a series of covenants pertaining to the disposition of revenues; these covenants establish priorities as to the disposition of utility system revenues received from ratepayers. The revenues are to be used, first, to meet operating expenses; next, to pay principal and interest on the bonded indebtedness; next, to make payments into various other accounts kept for the benefit of bondholders. Remaining revenues are covenanted to be paid into an account kept for improvements, repairs, and future expansion. Finally, in paragraph 8 of section 4.2 of the trust indenture, the city reserves to itself the right to devote any remaining revenues (remaining after meeting the obligations of paragraphs 1-7) to "any lawful purpose."
The state and intervenor contend that the provisions of paragraphs 7 and 8 work together so that the "excess revenues" referred to in paragraph 8 will at least be equal to the revenue devoted by paragraph 7 to repairs, improvements, and expansion. There is a direct connection, they argue, between what the city promises its bondholders and the existence of "excess revenues" subject to being transferred to the general fund. Thus, they conclude, the issue of the legality of revenue transfer practices is not collateral to these proceedings. They argue further that since the bond ordinance pledges the "gross revenues" of the utility system as security for the payment *1166 of the bond obligations, the surcharge, found by the trial court to be unauthorized, must be challenged in this proceeding since it is part of the system's "gross revenues." Referring to section 75.09, Florida Statutes (1977),[3] they assert that the questions of the legality of the surcharge, the segregation of revenues, and revenue transfer practices must be addressed in these proceedings or be forever foreclosed. Thus, they maintain, it was proper for the trial court to consider them. They cite Lipford v. Harris, 212 So.2d 766, 768 (Fla. 1968), where this Court said that a judgment of validation "puts at rest all questions which were raised in the validation as well as all questions which could have been raised."
The city vehemently asserts that questions relating to the legality and propriety of the surcharge and the transfer of excess revenues  the subject matter of the trial court's "limitations"  have no connection with the covenants made by the city for the benefit of bondholders. Any legal issues relating to such collateral matters, the city urges, can and must be litigated only in separate proceedings. The city argues that the validation of the bonds would not foreclose consideration of these collateral issues because the city has not covenanted to impose the surcharge or treat excess revenues in any particular way. The city has covenanted to set rates at levels that will produce revenues sufficient to meet the bond obligations. If any charge or class of charges imposed by the city were declared by a court of competent jurisdiction to be illegal, the city would simply have to change its methods of raising the covenanted revenue, as, for example, by an across-the-board rate increase. We agree with the city's position and with its reasoning.
In State v. City of Miami, 103 So.2d 185, 188 (Fla. 1958), this Court said:
It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or other issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.
Furthermore, we do not believe that the principle announced in the Lipford case applies to "put at rest" collateral questions that were somehow brought into the proceedings but need not and should not have been brought in. The plaintiff there, challenging a bond validation after the appeal time had run, was contesting the manner in which the proceeds of the bonds were to be expended. The contestants here are challenging ratemaking and the use of revenues from the operation of the utility. The collateral issues treated in section 20 of the judgment can be raised by proper parties in proper separate proceedings, and we offer no opinion as to the merits thereof.
The judgment appealed is affirmed in part and reversed in part, and the case is remanded. Section 20 should be deleted on remand. The judgment of validation is otherwise affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
NOTES
[1] No. 78-662-CA (Fla. 8th Cir. Ct. May 7, 1978); Record on appeal at 26.
[2] Record on appeal at 98.
[3] 75.09 Effect of final judgment.  If the judgment validates such bonds, certificates or other obligations, which may include the validation of the county, municipality, taxing district, political district, subdivision, agency, instrumentality or other public body itself and any taxes, assessments or revenues affected, and no appeal is taken within the time prescribed, or if taken and the judgment is affirmed, such judgment is forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby, including all property owners, taxpayers and citizens of the plaintiff, and all others having or claiming any right, title or interest in property to be affected by the issuance of said bonds, certificates or other obligations, or to be affected in any way thereby, and the validity of said bonds, certificates or other obligations or of any taxes, assessments or revenues pledged for the payment thereof, or of the proceedings authorizing the issuance thereof, including any remedies provided for their collection, shall never be called in question in any court by any person or party.