795 So.2d 940 (2001)
KEYS CITIZENS FOR RESPONSIBLE GOVERNMENT, INC., Appellant,
v.
FLORIDA KEYS AQUEDUCT AUTHORITY, Appellee.
No. SC01-411.
Supreme Court of Florida.
July 12, 2001.
*942 Kendall Coffey, Miami, Florida, and Charles P. Tittle of Tittle & Tittle, Chartered, Tavernier, FL, for Appellant.
Robert T. Feldman, General Counsel, Florida Keys Aqueduct Authority, and Grace E. Dunlap and Kenneth A. Guckenberger of Bryant, Miller and Olive, P.A., Tampa, FL, for Appellee.
Joseph A. Morrissey, Assistant County Attorney, Clearwater, FL, for Pinellas County, Florida, Amicus Curiae.
HARDING, J.
Keys Citizens for Responsible Government, Inc., (Citizens) appeals a circuit *943 court judgment validating a proposed bond issue by the Florida Keys Aqueduct Authority (Authority). We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.
The Authority was created by a special act of the Legislature in 1976, which has subsequently been amended and supplemented. See chs. 76-441, 77-604, 77-605, 80-546, 83-468, 84-483, 84-484, 86-419, 87-454, 98-519, Laws of Fla. The Authority's purpose is to obtain, supply, and distribute an adequate water supply for the Florida Keys and to collect, treat, and dispose of wastewater in the Keys. See ch. 76-441, § 1, at 305, Laws of Fla.; ch. 77-605, § 1, at 197, Laws of Fla.; ch. 98-519, § 1, at 294, Laws of Fla. The 1998 amendment also expanded the Authority's powers to include exclusive jurisdiction over wastewater system services in Monroe County, with the exception of specified incorporated areas. See ch. 98-519, § 6, at 298, Laws of Fla.
To counter the environmental dangers to the Florida Keys' ecosystem and water supply, Monroe County's Year 2010 Comprehensive Plan, which was completed in June 2000, calls for the development of a countywide sanitary wastewater master plan. In Executive Order 98-309, then-Governor Buddy MacKay charged various state and local agencies and governmental entities to coordinate with Monroe County to execute the Year 2010 Comprehensive Plan, including the planning and implementing of an improved wastewater management system. See Fla. Exec. Order No. 98-309 (Dec. 30, 1998).
To assist in the implementation of the Master Plan after its adoption, Monroe County entered into a Memorandum of Understanding with the Authority in May 1998, whereby the Authority would finance and operate a wastewater system throughout the Florida Keys similar to the water supply system that the Authority has operated for many decades. On January 19, 2000, Monroe County enacted an ordinance requiring mandatory connection to any central sewer system thirty days[1] after notification of availability for use and permitting payment of the required connection charges by monthly installments. See Monroe County, Fla., Ordinance No. 04-2000 (Jan. 19, 2000).
On October 18, 2000, the Authority adopted a resolution authorizing the issuance of sewer revenue bonds in various series to finance sewer projects in the Florida Keys. See Florida Keys Aqueduct Authority Resolution No. 00-20 (Oct. 18, 2000). In a second resolution, the Authority authorized the issuance of sewer revenue bonds in the amount of $4,500,000 to finance the first wastewater system to be constructed in the Little Venice area of the Marathon Wastewater District. See Florida Keys Aqueduct Authority Resolution No. 00-21 (Oct. 18, 2000). The bonds will be repaid by the fees of the users who will be required to connect to the system. The Authority filed a complaint in circuit court pursuant to chapter 75, Florida Statutes (2000), requesting validation of the bonds. The circuit judge issued a show cause order and scheduled a hearing for December 21, 2000. Notice of the hearing was published in the Key West Citizen newspaper on November 30 and December 7, 2000. Although the notice listed the wrong case number, it did contain the text of the *944 circuit court's order. Citizens moved for a continuance of the hearing on December 20, which the court denied. However, Citizens was granted intervenor status, and its counsel appeared by telephone at the bond validation hearing on December 21.
Following the hearing, the court entered final judgment validating the bonds. The court's order included two paragraphs requiring all sewer system customers to permit access for connection without payment by the Authority and requiring all property owners in the Authority's geographical jurisdiction to connect to the sewer systems at their own expense. Citizens' motion for reconsideration and amendment of the final judgment was denied.
Citizens has appealed the matter to this Court under our mandatory bond validation jurisdiction. The Authority filed a motion to expedite the appeal and to waive oral argument. The Authority argued that the timing of the project financed by the bonds is critical in order to receive over $4 million from a federal grant. This Court granted the Authority's motion to expedite resolution of the case and accepted the case without oral argument.
Bond validation proceedings are governed by chapter 75, Florida Statutes. As this Court explained in State v. City of Miami, 103 So.2d 185, 188 (Fla.1958), the statutes governing bond validation proceedings provide for speedy disposition of these cases. Further, the rules of this Court also recognize the necessity for the prompt disposition of these cases. Compare Fla. R.App. P. 9.110(i) with Fla. R.App. P. 9.110(f) (providing that the appellant's initial brief in a bond validation appeal shall be served within twenty days of filing the notice of appeal whereas initial briefs in other appeals must be served within seventy days of filing the notice). Thus, the "speedy and efficient disposition of bond validation proceedings," which is the purpose of both the statute and the rules, would be seriously impaired if collateral matters were injected into the proceedings. City of Miami, 103 So.2d at 188. This Court has reiterated its position that:
It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.
Id.; see also Noble v. Martin County Health Facilities Auth., 682 So.2d 1089, 1090 (Fla.1996); City of Gainesville v. State, 366 So.2d 1164, 1166 (Fla.1979).
The scope of this Court's inquiry in bond validation hearings is limited to the following considerations: (1) determining whether the public body has the authority to issue the bonds; (2) determining whether the purpose of the obligation is legal; and (3) ensuring that the bond issuance complies with the requirements of law. See Murphy v. Lee County, 763 So.2d 300, 302 (Fla.2000). Citizens does not question the Authority's power to issue the bonds or that the purpose of the obligation is legal. Instead, Citizens argues that the court's validation of the mandatory connection requirement was beyond the scope of the bond validation proceeding. Citizens raises three issues relating to the mandatory connection requirement in this appeal. Citizens argues that (1) validation of the mandatory connection requirement was not a proper part of the chapter 75 bond validation proceeding and should be stricken from the final judgment; (2) even if the mandatory connection provisions are not removed, the final judgment still should not have a res judicata or collateral estoppel effect on further challenges to the mandatory connection requirement; and (3) the validation proceeding violated its rights to due process.
*945 Section 75.01, Florida Statutes (2000), vests the circuit courts with "jurisdiction to determine the validation of bonds and certificates of indebtedness and all matters connected therewith." (Emphasis added.) It is the meaning of the phrase "all matters connected therewith" which is the crux of the instant appeal. Section 75.09, Florida Statutes (2000), provides that the final judgment in a bond validation proceeding is "conclusive as to all matters adjudicated against plaintiff and all parties affected thereby, including all property owners, taxpayers and citizens of the plaintiff, and all others having or claiming any right, title or interest in the property to be affected by the issuance of said bonds ... and the validity of said bonds ... shall never be called in question in any court by any person or party." If the Court determines that the mandatory connection requirement was a proper matter connected with the bonds, then the final judgment will be conclusive as to that issue and the requirement cannot be challenged in a subsequent proceeding.
Thus, the Court's resolution of issue one necessarily will determine issue two. If the consideration of the mandatory connection requirement is collateral to the bond validation proceeding, then the provisions relating to mandatory connection should be reversed with instructions that they be deleted from the final judgment and further challenges would not be foreclosed. See City of Miami, 103 So.2d at 190 (reversing portions of the judgment addressing two collateral issues with directions that the trial court delete them). If the matter was a proper part of the bond validation proceeding, then the final judgment will necessarily foreclose any further challenges. See § 75.09, Fla. Stat. (2000) (explaining effect of final judgment).
In those instances where issues have been deemed collateral and not the proper subject of a bond validation proceeding, this Court has noted that "the interested parties" to the collateral issue were not parties to the bond validation action and thus the trial court had no jurisdiction to decide the collateral issue in the proceeding. See, e.g., McCoy Restaurants, Inc. v. City of Orlando, 392 So.2d 252, 254 (Fla. 1980) (finding that validity of airline-aviation authority lease agreements was collateral to bond validation because airlines and other interested parties were not parties to action and trial court had no jurisdiction to determine validity of leases in bond validation proceeding); State v. Sunrise Lakes Phase II Special Recreation Dist., 383 So.2d 631, 633 (Fla.1980) (same as to validity of operating contract for recreational facilities with condominium association); City of Miami, 103 So.2d at 190 (finding that trial court lacked jurisdiction to determine Dade County's power to acquire waterworks system of the City of Miami and to rule on tax exempt status of the property of the City's waterworks system; stating that bond validation statute did not give the court power to bring other parties into the proceedings). Section 75.02, Florida Statutes (2000), provides that the party seeking bond validation can file a complaint in circuit court "against the state and the taxpayers, property owners, and citizens" of the area affected by the bonds. Section 75.05 further provides that the court shall issue an order "directed against the state and the several property owners, taxpayers, citizens and others having or claiming any right, title or interest in property to be affected by the issuance of bonds or certificates" requiring them to appear at the bond validation hearing to show why the complaint should not be granted and the bonds validated.[2] *946 Thus, the citizens and property owners in the area affected by the sewer bonds were parties to the bond validation proceeding and the circuit court had jurisdiction over them.
The real question here is whether approval of the mandatory connection ordinance was collateral to the bond validation proceeding or not. In State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994), this Court explained that "[s]ubsumed within the inquiry as to whether the public body has the authority to issue the subject bond is the legality of the financing agreement upon which the bond is secured." In Port Orange, the City enacted a transportation utility ordinance whereby a transportation utility fee was imposed on the owners and occupants of developed property within the City. Id. at 2. The City pledged the proceeds of these fees to pay the transportation utility bonds issued to finance city transportation facilities. Id. at 3. This Court concluded that the "fee" was actually an impermissible tax and thus the City was not authorized to issue the bonds and the bonds could not be validated. Id. at 4. Similarly, in GRW Corp. v. Department of Corrections, 642 So.2d 718 (Fla.1994), in addition to validating a lease-purchase agreement between the Department of Corrections and a private company for the construction of a correctional facility, the trial court ruled that a losing bidder was barred from renewing any bid protest in the matter. On appeal, the losing bidder argued that this issue was collateral to the chapter 75 proceeding. This Court held that the issue was not collateral "because it goes directly to the legality of the special type of financing method at issue here." Id. at 721. The Court further explained that the bid procedure was "clearly a basic part of this unique financing arrangement" and thus the trial court had jurisdiction to find the loser bidder was barred from further protest against the bid award. Id.
Citizens argues that this Court has previously ruled that a mandatory sewer connection ordinance is "not a matter of judicial concern in a bond validation proceeding." DeSha v. City of Waldo, 444 So.2d 16, 18 (Fla.1984). DeSha involved a bond validation proceeding in which the citizen intervenors sought to invalidate proposed municipal bonds for the improvement of the City of Waldo's water supply and waste water collection and treatment systems. The citizens argued that the circuit court could not approve the municipal borrowing until the City enacted a mandatory water and sewer connection ordinance in order to ensure sufficient revenues to meet the bond obligations. See id. at 17. The citizens questioned the financial stability of the bonds based on the lack of a valid mandatory connection ordinance. This Court noted that the financial strength of the project was not a matter within the scope of its review. See id. at 18. Further, the Court stated that even if the ordinance were relevant to its review, the Court would presume that the city would enact a valid ordinance. See id.
The instant case presents the flip side of DeSha. Pursuant to Florida law, Monroe County has enacted a mandatory connection ordinance. See Monroe County Ordinance No. 04-2000 (Jan. 19, 2000); see also § 381.00655, Fla. Stat. (2000) (providing that property owners must connect to available sewer systems within one year of receiving notification of availability); ch. 99-395, § 4, at 4068, Laws of Fla. (authorizing local governments within the Florida Keys area of critical state concern to enact an ordinance requiring connection to a *947 central sewer system within thirty days). Further, the Authority's bond resolution, which authorizes the issuance of sewer revenue bonds in various series to finance the Authority's sewer projects in the Florida Keys, includes a provision requiring compulsory connection by every property owner in the area of operation in order that the connection fees and service charges may "secure the prompt payment of principal and interest on the Bonds." Florida Keys Aqueduct Authority Resolution No. 00-20, at 51 (Oct. 18, 2000). Thus, unlike DeSha, the validity of an existing connection ordinance was squarely before the circuit court as part of the bond validation proceeding.
Contrary to Citizens' assertion, we do not find that DeSha stands for the broad proposition that a mandatory connection ordinance will always be a collateral issue in a bond validation proceeding. In the instant case, as in Port Orange and GRW, the mandatory connection fees and rates charged for the service rendered to the properties connected to the central sewer system are tied to the financing agreement upon which the bonds will be secured. Thus, the validity of the mandatory connection ordinance was not a collateral issue, but part of the trial court's inquiry into whether the public body has the authority to issue the bonds. See Port Orange, 650 So.2d at 3. As this Court explained in State v. Manatee County Port Authority, 171 So.2d 169, 171 (Fla.1965), "[t]he function of a validation proceeding is merely to settle the basic validity of the securities and the power of the issuing agency to act in the premises. Its objective is to put in repose any question of law or fact affecting the validity of the bonds." Additionally, at the bond validation hearing in the instant case the trial court heard evidence that mandatory connection is required both by Florida statute and by Monroe County ordinance, and that both the economic feasibility of the central sewer system and the public purpose for this project are predicated on the hook-up of all property in the area of operation. Thus, the mandatory connection was an appropriate issue for this bond validation proceeding.
Having determined that the validation of the mandatory connection requirement was a proper part of the bond validation proceeding, we find that issue two is moot and that the final judgment will necessarily foreclose any further challenges. See § 75.09, Fla. Stat. (2000) (explaining effect of final judgment). Further, there is little doubt that all residents of the Florida Keys can be required to connect to a central sewer system by virtue of the mandatory connection ordinance. See, e.g., Stern v. Halligan, 158 F.3d 729, 734 (3d Cir.1998) ("It cannot escape our notice that from the inception of such sanitary programs ... courts have routinely rejected constitutional challenges to mandatory connection requirements."). As discussed above, Florida law provides that property owners with existing onsite sewage treatment and disposal systems must connect to a central sewerage system within a specified time of being notified that the central system is available for connection. See § 381.00655, Fla. Stat. (2000). As early as 1976, the Legislature gave the Authority power to prohibit the use of septic tanks and other sanitary structures, provided that adequate alternate facilities are available. See ch. 76-441, § (9)(a), at 312, Laws of Fla. In 1998, the Legislature gave the Authority power to require mandatory hookup to specific wastewater treatment plants in order to manage effluent disposal and wastewater matters. See ch. 98-519, § 6, at 298, Laws of Fla. The Governor's Executive Order 98-309 also provides that onsite treatment systems in the Florida Keys will be abandoned when central sewage systems become *948 available and that connection to such systems shall be mandatory. Additionally, in 1999 the Legislature gave local governments within the Florida Keys area the power to enact ordinances requiring connection to a central sewage system within thirty days after notice of the availability of service. See ch. 99-395, § 4, at 4068, Laws of Fla. This is exactly what Monroe County did in County Ordinance 04-2000.
Finally, even though the Court finds that the validity of the mandatory connection requirement was a proper part of the bond validation proceeding, we still address Citizens' argument that the circuit court's consideration of the issue violated procedural due process.
The basic due process guarantee of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. The Fifth Amendment to the United States Constitution guarantees the same. As this Court explained in Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991), "[p]rocedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue." Procedural due process requires both fair notice and a real opportunity to be heard. See id. As the United States Supreme Court explained, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted). Further the opportunity to be heard must be "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); accord Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (stating that procedural due process under the Fourteenth Amendment of the United States Constitution guarantees notice and an opportunity to be heard at a meaningful time and in a meaningful manner).
The specific parameters of the notice and the opportunity to be heard required by procedural due process are not evaluated by fixed rules of law, but rather by the requirements of the particular proceeding. See Gilbert v. Homar, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); see also Mullane, 339 U.S. at 313, 70 S.Ct. 652 (stating that notice and opportunity for hearing need only be appropriate to the nature of the case). As the Supreme Court has explained, due process, "unlike some legal rules, is not a technical concept with a fixed content unrelated to time, place and circumstances." Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
In order to determine what process is constitutionally required, the Court "must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria & Restaurant Workers Union, 367 U.S. at 895, 81 S.Ct. 1743. Three factors are relevant in determining what process is constitutionally due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest *949 through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. See Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. 893; Gilbert v. Homar, 520 U.S. at 924, 117 S.Ct. 1807.
In bond validation proceedings, the Legislature has provided that a copy of the bond validation complaint and the court's order to show cause why the complaint should not be granted and the bonds validated must be served on the state attorney in the circuit where the proceeding is pending. See § 75.05(1), Fla. Stat. (2000). The clerk of the court is also required to publish a copy of the order for two consecutive weeks at least twenty days before the hearing in a newspaper of the county where the complaint is filed. See § 75.06(1), Fla. Stat. (2000). "By this publication all property owners, taxpayers, citizens, and others having or claiming any right, title or interest in the county, municipality, or district, or the taxable property therein, are made parties defendant to the action and the court has jurisdiction of them to the same extent as if named as defendants in the complaint and personally served with process." Id. Thus, the Legislature has authorized constructive notice of property owners or other interested parties in bond validation proceedings.
Citizens complains that the Authority should have given actual notice to each property owner that validation of the mandatory connection ordinance would be considered during the bond validation proceeding. However, in Penn v. Florida Defense Finance & Accounting Service Center Authority, 623 So.2d 459, 462 (Fla. 1993), this Court held that the statutory twenty-day period between publication of notice and the bond validation hearing did not violate the Florida and federal guarantees of due process. Thus, the Court necessarily concluded that such constructive notice by publication is appropriate in bond validation proceedings.
Citizens also complains that the published constructive notice was not satisfactory because there was no mention that the circuit court would consider the validity of the mandatory connection ordinance and also because the notice referenced the wrong case number. However, in Washington Shores Homeowners' Ass'n v. City of Orlando, 602 So.2d 1300, 1302 (Fla. 1992), this Court concluded that a newspaper advertisement of a bond validation hearing for an unspecified "roadway project" provided adequate notice and "complied with the requirements of law." Nor do the pertinent bond validation statutes require the specificity of published notice urged by the Citizens. See §§ 75.05, 75.06, Fla. Stat. (2000).
Under the Mathews v. Eldridge analysis, the private interest that will be affected by the proceeding here is mandatory connection to the central sewer system at the property owners' expense. The risk of an erroneous deprivation of such interest through the procedures used is very low as section 381.00655, chapter 99-395, and Executive Order 98-309 already require mandatory connection, as discussed above. Further, the additional procedural safeguard of actual notice urged by Citizens would add a tremendous burden and expense to the validation of bonds like these and would have little value as all Florida property owners are already on notice that mandatory connection is required by law. Moreover, the government's interest here is to protect public health and safeguard water quality in an area of critical state concern. See Hutchinson v. City of Valdosta, 227 U.S. 303, 308, 33 S.Ct. 290, 57 L.Ed. 520 (1913) ("It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and *950 to compel property owners to connect therewith.").
Finally, the evidence presented at the hearing showed the following: Monroe County developed a Sanitary Waste Master Plan over the course of three years during which there was extensive public outreach. This process included a series of forums and workshops throughout the Florida Keys; meetings between the planning group and various civic, environmental, and business groups; and monthly televised public meetings of a citizens' task force on waste water during the last two years of the planning period. Cf. State v. City of Boca Raton, 172 So.2d 230, 234 (Fla.1965) (finding that the resolution authorizing the issuance of special obligation capital improvement bonds and the evidence adduced at the bond validation hearing, together with the plans and specifications prepared by the city's advisory committee and referred to in the bond resolution and a part of the city's public records, were sufficient to give the citizens and taxpayers adequate knowledge concerning the purposes for which the bonds were to be issued). This process gave citizens adequate notice of the mandatory sewer connection requirement.
For the reasons discussed above, we find no merit to the arguments raised on appeal. Accordingly, we affirm the order validating the sewer revenue bonds to be issued by the Authority.
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
LEWIS, J., concurs in part and dissents in part with an opinion.
LEWIS, J., concurring and dissenting in part.
I concur in part and dissent in part. I concur to the extent that we affirm the order validating the revenue bonds under review; however, I respectfully dissent to the inclusion of that which has been previously identified by this Court as a collateral issue in the validation process. In my view, the majority today has not and cannot adequately distinguish prior decisions of this Court which directly address the issue concerning the prohibition of including collateral matters in bond validation proceedings. If we are to expand the scope of bond validation proceedings, we should, in my view, do so in clear and precise terms rather than attempting to rely on distinctions without any real difference to reach the result.
If bond validation proceedings are to also include expedited validation of disputed matters upon which the underlying repayment plan for such bonds is premised, we should particularly recede from both McCoy Restaurants, Inc. v. City of Orlando, 392 So.2d 252 (Fla.1980), and DeSha v. City of Waldo, 444 So.2d 16 (Fla.1984). The failure to do so only unnecessarily adds confusion in another area of Florida law.
In McCoy, this court remained consistent in the approach to bond validation proceedings that we would only: (1) determine whether the public body had authority to issue the bonds; (2) determine whether the purpose of the obligation was legal; and (3) ensure that the bond issuance complied with the requirements of the law. See Murphy v. Lee County, 763 So.2d 300, 302 (Fla.2000); Noble v. Martin County Health Facilities Auth., 682 So.2d 1089, 1090 (Fla.1996);. There, the repayment or financing of the bonds for airport construction and expansion was to be based exclusively on funds received from the rental and lease of airport areas. Thus, the validity of the underlying lease agreements for such areas would be the essential part of the repayment or financing plan. Notwithstanding such essential *951 position in the financing plan for the bonds, this Court held:
We find that appellants' first point concerning the validity of the lease agreement is clearly a collateral issue and not properly the subject of a bond validation proceeding. The sole purpose of a validation proceeding is to determine whether the issuing body had the authority to act under the constitution and laws of the state and to ensure that it exercised that authority in accordance with the spirit and intent of the law. State v. City of Miami, 379 So.2d 651 (Fla.1980); State v. Sarasota County, 372 So.2d 1115 (Fla.1979); State v. City of Sunrise, 354 So.2d 1206 (Fla.1978). As the court stated in State v. City of Miami, 103 So.2d 185 (Fla.1958):
It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or those other issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.

Id. at 188. Accord, State v. Sunrise Lakes Phase II Special Recreation District, 383 So.2d 631 (Fla.1980); City of Gainesville v. State, 366 So.2d 1164 (Fla. 1979).
392 So.2d at 253-54.
In a similar manner, and more closely on point, in DeSha, this Court considered the validity of bonds to be utilized to finance the improvement and expansion of water supply and wastewater collection and treatment systems just as the proceeds from the proposed bonds here will be used for wastewater projects. In DeSha, the proposed bonds were to be repaid, in part, from revenue generated by the operation of the water and sewer system, just as repayment here will flow from the fees paid by users. In holding that ordinances related to the mandatory connection to such systems were collateral matters beyond the scope of judicial review in bond validation proceedings, this Court clearly stated:
The appellants' argument pertains to a matter to be resolved by future decision-making on the part of the City in operating and governing its expanded water and sewer system. As such it is a collateral matter beyond the scope of judicial scrutiny in bond validation proceedings. See City of Gainesville v. State, 366 So.2d 1164 (Fla.1979). The appellants say that a mandatory connection ordinance is subject to being challenged on numerous substantive and procedural grounds and that, if the City adopts a substantively invalid ordinance or departs from procedural regularity in enacting the ordinance, the financial viability of the project will be undermined. The financial strength of the project, however, is not a matter within the scope of this Court's review. Our review is limited to the question of "whether the issuing body has the power to act and whether it exercised that power in accordance with law." Town of Medley v. State, 162 So.2d 257, 259 (Fla.1964). The fact that prospective bond purchasers might find the project questionable because of the lack of a valid mandatory connection ordinance is not a matter of judicial concern in a bond validation proceeding. "It was never intended that proceedings instituted under the authority of this chapter to validate government securities would be used for the purpose of deciding collateral issues of those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto." State v. City of Miami, 103 So.2d 185, 188 (Fla.1958).
Desha at 17-18 (emphasis added).
The majority seeks to justify its further expansion of chapter 75 proceedings *952 through reliance on the phrase "all matters connected therewith" contained within section 75.01, Florida Statutes. This provision has remained virtually unchanged since 1967, and was certainly part of the statute in 1980 and 1984 when McCoy and DeSha were rendered. Further, the issue here is not whether a mandatory connection ordinance may meet constitutional standards, nor is it whether there may be statutory authority for the requirement. The issue here is whether this Court has established such matters as being collateral issues beyond the purview of expedited and limited bond validation proceedings. In my view, the Court has today adopted the dissenting opinion of Justice Adkins in McCoy, without so stating, and the majority should do so clearly and directly rather than artificially distinguishing the existing decisions which, most certainly, require a different result. The parameters of bond validation proceedings should be more clearly defined for Florida citizens.
NOTES
[1] Section 381.00655, Florida Statutes (2000), provides that property owners must connect to available sewer systems within one year after receiving notification of availability. However, the Legislature has authorized local governments within the Florida Keys area of critical state concern to enact an ordinance requiring connection to a central sewer system within thirty days. See ch. 99-395, § 4, at 4068, Laws of Fla.
[2] Section 75.05(3), Florida Statutes (2000), requires independent special districts such as the Authority to also serve a copy of the complaint for bond validation on the Division of Bond Finance of the State Board of Administration.