BENTON, J.,
dissenting.
Advent Oil & Operating, Inc. (AO & 0) and S & E Enterprises, LLC (S & E) were partners in an oil well on land belonging to a third party, when they entered into the agreement at issue here. They hoped the oil well (in which AO & O and S & E had other partners) would yield oil and gas over an extended period, and were aware that, in that event, substantial quantities of salt water (which would accompany petroleum to the surface) would need to be dealt with, as a matter not only of industry practice but also in order to meet requirements the land owner had placed in the oil well partnership’s land lease.
To that end, AO & O and S & E agreed to a separate joint venture which would build a disposal well to handle saltwater byproduct, a service for which the joint venture would have been able to charge the oil well partnership. All went according to plan[1] until the oil well “proved to be unproductive.” Ante, p. 72. At that juncture, S & E sued AO & 0, demanding the return of its entire investment in the saltwater disposal well joint venture, with interest.
Viewing their agreement as creating a joint venture that had failed through neither’s fault, AO & 0 took the position that it had drilled the disposal well and otherwise complied fully with the terms of the agreement, and had no liability to S & E. Only after S & E filed suit was the saltwater disposal well dismantled (as required by the joint venture’s land lease) and sold for salvage.
Despite numerous factual disputes, the trial court granted S & E partial summary judgment (as to liability) on the theory AO & 0 “breached Paragraph 7 of the contract by abandoning the well and salvaging it within the four-year period.” Ante, p. 72. Chief among the fact disputes was the parties’ intent in entering into the joint venture agreement.[2]
The majority opinion suggests that any error in the grant of summary judgment was cured when a “full evidentiary hearing was held more than two years later on damages.” Ante, p. 72. But see Hart Properties, Inc. v. Slack, 159 So.2d 286, 240 (Fla.1963) (“[Djefendant was entitled to have his motion for summary judgment decided on the pleadings as they stood at the time of the hearing.”).
An evidentiary hearing on damages is not an adequate substitute for the trial on liability of which partial summary judgment deprived AO & 0. When summary judgment has established liability, liability *74 is no longer at issue at a trial or hearing on damages. Florida Rule of Civil Procedure 1.510(d) provides that if summary judgment “is not rendered upon the whole case ... and a final hearing is necessary, the court ... shall thereupon make an order specifying the facts that appear without substantial controversy ... and directing such further proceedings in the action as are just,” and contemplates that the final hearing shall be “limited to the remaining disputed issue or issues.” Fontainebleau Hotel Corp. v. Young, 162 So.2d 303, 304 (Fla. 3d DCA 1964). Here, the order granting partial summary judgment specifically found that AO & 0 had breached the joint venture agreement and reserved jurisdiction only on the issue of S & E’s damages, attorney’s fees and costs.[3]
AO & 0 had no notice[4] that any issue as to liability was to be revisited, and there is no indication that any was: After the hearing on damages, the trial court ordered “a complete return of Appellee’s investment, plus seven percent interest.” Despite the contract language evincing a joint venture,[5] the trial court awarded damages as if AO & O had executed a promissory note.
*75 I respectfully dissent from today’s decision to affirm the judgment below.

. The majority opinion notes: “It is undisputed that Appellants drilled an SDW [saltwater disposal well] with a minimum capacity capable of producing sufficient revenue to recover Appellee's investment.” Ante, p. 71.

. The trial "court found that several terms in the contract were ambiguous.” Ante, p. 72.

. The scheduling order entered September 19, 2007, directs the parties to exchange witness and exhibit lists for evidence "at the damages portion of this case.” AO & O filed a final witness and exhibit list for the trial "on the issue of damages.” The various notices of trial and orders setting or continuing trial do not give notice that any issue other than damages would be considered at the subsequent hearing.

. The right to reasonable notice implicates constitutional due process concerns. "Procedural due process requires both fair notice and a real opportunity to be heard.” Borden v. Guardianship of Borden-Moore, 818 So.2d 604, 607 (Fla. 5th DCA 2002) (quoting Keys Citizens for Responsible Gov’t v. Fla. Keys Aqueduct Auth., 795 So.2d 940, 948 (Fla.2001)). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.” Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted). The opportunity to be heard must be "at a meaningful time and in a meaningful manner.” Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). AO & O had no notice that liability under the agreement was up for reconsideration by the court at the hearing on damages. See State Farm Mut. Auto. Ins. Co. v. Horkheimer, 814 So.2d 1069, 1074 (Fla. 4th DCA 2001) (holding that notice "of a change in the pleadings or the issues to be litigated at trial is an issue of elementary due process”); Smith v. Unemployment Appeals Comm’n, 751 So.2d 639, 640 (Fla. 1st DCA 1999) ("Due process requires that the claimant receive proper notice of the issues to be heard or expressly waive such notice; otherwise the claimant is deprived of a fair hearing.”); Town of Jupiter v. Andreff, 656 So.2d 1374, 1378 (Fla. 1st DCA 1995) ("Parties are entitled to notice so that they may fairly present their case.”); Se. Recycling v. Cottongim, 639 So.2d 155, 157 (Fla. 1st DCA 1994) ("An order that is not in accord with the understanding with which the workers’ compensation hearing was undertaken and participated in is a denial of due process and must be reversed.”); Thomas v. Harris, 634 So.2d 1136, 1136-37 (Fla. 1st DCA 1994) (holding trial court erred in awarding temporary custody of child based on aggravation of child’s asthma resulting from cigarette smoking of wife’s new husband and mother-in-law, because the motion for temporary custody alleged solely that the child's progress in school had deteriorated and a "court cannot modify a judgment unless the issue of modification is properly presented to it by appropriate pleadings and each party is given an opportunity to respond and a hearing had with the necessary proof adduced”); Margulies v. Margulies, 528 So.2d 957, 959 (Fla. 3d DCA 1988) ("A trial court violates a litigant's due process rights when it expands the scope of a hearing to address and determine matters not noticed for hearing.”).

.The joint venture agreement contemplated a going enterprise whose profits would vary with the amount of saltwater disposed of:
1. S & E will provide a capital investment of $250,000.00 (the "Capital Investment”) *75 and receive seventy-five (75%) of the NET profits as an investment interest and will have no further capital investment claims by AO & O and will be indemnified by AO & O from any debts, claims or any cause of action.
2. AO & O will drill, develop, provide engineering, furnish all permits to the appropriate authorities and maintain said SDW, holding harmless S & E from all expense and claims consistent with a turn-key drilling contract receiving a twenty-five percent (25%) of the NET profits as a working interest.
3. S & E's capital investment shall not exceed the original amount of venture capital. See Estimate of Construction Costs Report-Exhibit # 3
4. AO & O has completed surveying and has located the SDW site and initiated engineering for all aspects of this project.
5. AO & O will complete and have operational the SDW in 120 days or less from the signing of this agreement.
[[Image here]]
12.Barrels of saltwater will be metered at the user oil well and certification of calibration of such meter will be provided by AO & O to S & E upon request.
13. AO & O will make monthly payments of profit to S & E which will be due no later than 50 days after the end of the operating month. Should payments be late a one and one-half percent (1.5%) interest on the amount due for each month in addition to any other fees or costs will be due. In the event of collection, additional fees and costs including attorney’s fees will be due.
14. Profits from disposal of saltwater will be made in the amount of seventy-five percent (75%) to S & E and twenty five percent (25%) to AO & O. Operating expenses will be allocated at the same percentage.
15. Operating expenses include insurance, electricity, monthly charges from landowner, maintenance and repairs, and in no case should exceed $1,500.00 per month. AO & O’s twenty-five percent (25%) share will be reduced by the amount of the excess operating cost until operating cost no longer exceeds $1,500.00 per month.
[[Image here]]
24. If it becomes necessary to plug and abandon the SDW the cost as well as the money from the recovery would be shared on previously agreed percentages of seventy-five (75%) to S & E and twenty-five percent (25%) to AO & O.