DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHRISTINE SWISTOCK FLEGAL, AMY SWISTOCK, PEGGY S. KEESHIN** and **NANCY SWISTOCK SNYDER,**
Appellants,

v.

**GUARDIANSHIP OF PETER R. SWISTOCK, SR.,**
Appellee.

No. 4D13-4410

[July 15, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 502011GA000097.

John Farina of Boyes & Farina, P.A., Palm Beach Gardens, for appellants.

Robin I. Bresky and Michele K. Feinzig of Law Offices of Robin Bresky, Boca Raton, (withdrawn as counsel after filing a brief), for appellee.

MAY, J.

Due process and a family dispute over stock shares are at the center of this appeal. Four sisters appeal orders entered in a guardianship. They argue that their property, stock shares, was taken without due process. We agree in part and reverse in part.

The father and ward had five daughters and two sons. Four daughters lived out-of-state; the fifth daughter lived in Florida, as did the father. A dispute arose between the four out-of-state daughters and their father over 39,668 shares in Omega Bank. When First National Bank ("FNB") purchased Omega Bank, it issued new share certificates to the father and the four daughters. Each of the four daughters claimed ownership with their father as joint tenants with right of survivorship of 9,917 shares each.

In 2010, the father sued the four daughters in Pennsylvania. He alleged that he had transferred the stock shares to his four daughters as a joint tenancy with right of survivorship, but had intended for them to

inherit the stock upon his death. He had not intended to gift the stock to them. He paid for the stock, kept possession of the certificates, retained all dividends, and paid income tax on those dividends. The father had requested the four daughters to sign the stock back to him, but they refused. The father sought a declaration that he was the sole owner of the stock. This litigation would outlive the father.

In 2011, while the Pennsylvania suit was pending, the four daughters filed a petition in Florida to: (1) determine the father's capacity; and (2) appoint them plenary guardians of the father's person and property. The father moved to dismiss the proceedings, alleging the petition had been filed in bad faith to avoid the outcome of the Pennsylvania action. When three court-appointed medical examiners concluded he was not incapacitated, the four daughters voluntarily dismissed their petition.

In September 2012, the father suffered a stroke, and was hospitalized in critical condition. The fifth daughter, who lived in Florida, petitioned the circuit court to have the father declared incapacitated, and to be appointed emergency temporary guardian and plenary guardian. She alleged her father was in imminent danger because his recent stroke rendered him vulnerable to "elderly exploitation and abuse" by her sisters, who were "currently the subjects of open elder abuse claims filed in Pennsylvania." The petition for appointment of plenary guardian listed the stock as property subject to the guardianship.

The trial court entered three orders: (1) appointing counsel for the father; (2) directing an examination of the father; and (3) setting the hearing on the petition for September 11, 2012. The orders were mailed to the four daughters, who received them just four days prior to the hearing. Two of them sent a letter to the court stating that they could not attend the hearing on such short notice.[1] The incapacity petition was set for hearing on October 19, 2012. The four daughters were mailed a copy of the notice sent to the father.

At the September 11th hearing, the trial court appointed the fifth daughter emergency temporary guardian for ninety days, or until a permanent guardian was appointed, whichever came first. She was granted "full power" to exercise the powers and duties, among other things, over "[a]ny and all shares of stock held at FNB Corporation purchased by [the father], including . . . all dividends issued by FNB Corporation."

---

[1] Although the letter is in the record, it is unclear whether the court actually received it.

The next day, pursuant to an agreement between the guardian's counsel and the ward's counsel, the fifth daughter submitted a proposed order that required Registrar and Transfer Company to transfer current title of the shares in FNB—51,636 in total—from the joint tenancy with the four daughters to the fifth daughter as guardian. Of these shares of stock, 39,668 were the focus of the then-pending Pennsylvania litigation. The fifth daughter requested the stock "for the specific purpose of protecting the father and securing dividends needed to pay for his round-the-clock care." Without notice to the four daughters or a hearing, the court signed the order on September 12th. The father died the next day.

The following month, the fifth daughter petitioned to be discharged as the emergency temporary guardian of the father's person. She filed her Final Report of Emergency Temporary Guardian of the Property. She transferred the 51,636 shares of FNB from herself "as emergency temporary guardian" to herself as personal representative of her father's estate.

In January 2013, after a bench trial that took place prior to the father's death, the Pennsylvania court found in favor of the four daughters. It determined the stock was held as joint tenants with the right of survivorship.

On March 15, 2013, five months after the fifth daughter had filed her final report, the four daughters filed an objection. They argued that they owned 39,668 of the 51,636 shares of FNB as a joint tenancy with the father and objected to the September 12th order that allowed for the transfer of the FNB stock. They claimed lack of reasonable notice and an opportunity to be heard. They asked the court to disapprove the final report and require the fifth daughter to turn over their stock.

The Clerk's Audit of the Final Accounting included a comment that the objection was filed on March 15, 2013, but that objections were to be filed up to thirty days from the filing of the final report. On May 2, 2013, the trial court entered an order approving the final report, noting the untimely objection. Three weeks later, the court entered an order approving distribution of the 51,636 shares to the father's estate. The trial court entered an order, discharging the fifth daughter as the emergency temporary guardian.

The four daughters moved to vacate the discharge order, arguing that they were not notified of the September 12th order transferring their shares, the petition for discharge, final accounting, or the final report.

3

On October 31, 2013, the trial court entered a second order of discharge. The four daughters moved for rehearing. They then filed a notice of appeal abandoning their motion for rehearing.

The four daughters argue they were deprived of their FNB stock without due process rendering the orders of discharge and approval of the final report void. The guardianship responds that the trial court followed Florida law and rules, notified the four daughters of the proceedings, and they simply failed to appear and file appropriate requests.

We have de novo review of a trial court's compliance with the guarantees of due process. *VMD Fin. Servs., Inc. v. CB Loan Purchase Assocs.*, 68 So. 3d 997, 999 (Fla. 4th DCA 2011).

The United States Constitution guarantees that no state "shall deprive any person of life, liberty, or property without due process of law." Amend. XIV, § 1, U.S. Const.; *see also* Art. I, § 9, Fla. Const. "[D]ue process requires both fair notice and a real opportunity to be heard." *Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

Rule 5.648(b) requires that the "notice of filing of the petition for appointment of an emergency temporary guardian and any hearing . . . be served before the hearing on the . . . alleged incapacitated person and on the alleged incapacitated person's attorney." Fla. Prob. R. 5.648(b). The Rule does not actually require notice to the four daughters.

The four daughters argue, however, that Rule 5.041 provides that "*every petition or motion for an order determining rights of an interested person . . . shall be served on interested persons.*"[2] Fla. Prob. R. 5.041 (emphasis added). They claim to be interested persons who should have received reasonable notice before the stock transfer. We agree.

When the petition was filed, the stock was titled in the names of each of the four daughters and the father as a joint tenancy with right of

---

[2] The Florida Statutes defines an "interested person" as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding." § 731.201(23), Fla. Stat. (2012).

4

survivorship. Their interests were affected by the court's September 12th order transferring the stock to the fifth daughter as emergency temporary guardian. They were entitled to reasonable notice and an opportunity to be heard. *See Hagopian v. Zimmer*, 653 So. 2d 474, 476 (Fla. 3d DCA 1995) (stating that *presumptive owners* of joint accounts are entitled to notice). "While there are no hard and fast rules about how many days constitute a 'reasonable time,' the party served with notice must have actual notice and time to prepare." *Harreld v. Harreld*, 682 So. 2d 635, 636 (Fla. 2d DCA 1996).

The Fifth District has held that four days' notice is unreasonably short in guardianship proceedings. *See Anderson v. Sun Trust Bank/N.*, 679 So. 2d 307, 308 (Fla. 5th DCA 1996) (reversing an order awarding guardianship fees and costs due to insufficient notice).

Because the four daughters did not receive reasonable notice, they were deprived of their property without due process. This due process violation was even more egregious as the petition did not actually request the transfer of the stock, but merely identified the stock as subject to the guardianship. So, there was in effect no notice of the fifth daughter's intent to transfer the stock.

We find no merit, however, in the four daughters' argument that the court erred in entering the initial order of discharge. Rule 5.680(f) provides:

> (f) **Objections**. All persons served shall have 30 days to file objections to the petition for discharge and final report. . . . If a notice of hearing on the objections is not served within 90 days of filing of the objections, the objections will be deemed abandoned.

Fla. Prob. R. 5.680(f). Here, the four daughters failed to file their objection within thirty days of notice of the petition for discharge and the final report. They further failed to notice a hearing on their objection within ninety days after filing it. They therefore abandoned or waived any objection. *See id.*

*Reversed in part and remanded for further proceedings consistent with this opinion.*

TAYLOR and KLINGENSMITH, JJ., concur.

*     *     *

*Not final until disposition of timely filed motion for rehearing.*