DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

THE RECOVERY AGENTS, LLC,

Appellant,

v.

VIVIAN TUTKO,

Appellee.

No. 2D2024-0476
_____

January 22, 2025

Appeal from the Circuit Court for Pinellas County; Pamela A.M. Campbell, Judge.

Brice Zoecklein of Zoecklein Law, PA, Brandon, for Appellant.

Mark Hanks of Attorney Hanks, P.A., St. Petersburg, for Appellee.

LaROSE, Judge.

The Recovery Agents, LLC (TRA), appeals the "Order Granting Motion to Intervene, Avoid Assignment, and For Other Relief." We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A); 9.170(b)(4). Without allowing TRA to meaningfully contest the allegations against it, the trial court found that TRA engaged in a fraudulent conveyance of assets. *See*

§ 726.105(1)(a), Fla. Stat. (2024).  We reverse and remand for an evidentiary hearing.[1]

## Background

Mark and Vivian Tutko[2] divorced in 2018.  An amended dissolution judgment required Mark to pay child support.  He fell behind on his payments.  Consequently, in September 2019, the trial court entered a $57,000 arrearage judgment against him.

About two years later, Mark's father died.  Mark was his sole heir.  The estate was valued at a shade over $100,000.  This sum reflected surplus proceeds from the foreclosure sale of the father's home.

In November 2023, Mark signed an "Irrevocable Assignment of Interest in the Probate Estate of [his father]" to TRA.  As reflected in a separate "Agreement & Assignment of Surplus Rights," in exchange for administering the estate, TRA would receive twelve percent of the surplus funds.  Mark would take the rest.[3]

In January 2024, TRA petitioned for summary administration of the estate.

Upon learning of the agreement between Mark and TRA, Vivian promptly filed an "Emergency Motion to Intervene, Avoid Assignment and Grant Other Relief."  Vivian saw the agreement as Mark's effort to shun his child support obligation to her, a judgment creditor.[4]  She attached to

---

[1] Because of our disposition, we do not reach TRA's other appellate arguments.

[2] For convenience, we refer to the Tutkos by their first names.

[3] As explained later, TRA suggests that its compensation arrangement with Mark changed to a cash buyout.

[4] Vivian is not a creditor of the estate.  She filed a caveat in the probate case identifying herself only as an interested person.  *See* § 731.110(1), (3), Fla. Stat. (2024).  Vivian asserted that she had a claim as

her motion copies of the arrearage judgment, the irrevocable assignment, and the assignment of surplus rights.

The next day, Vivian scheduled a fifteen-minute Zoom hearing, noticed to occur in less than forty-eight hours. She did not set the motion for an evidentiary hearing. Vivian sent a copy of the notice of hearing to Mark and TRA.

Vivian, TRA, and their respective lawyers attended the hearing. Mark did not. The lawyers presented arguments. No one called witnesses. TRA protested that it was entitled to an evidentiary hearing. TRA argued that it had

> paid valuable consideration for the assignment, so there was transfer of money from [TRA] to [Mark] in exchange for the rights to claim these funds. So if that's the position or a potential position for this Court, it would be unfairly prejudicial to him not to have the opportunity for a longer hearing. We just got this motion three days ago, so I would like to be able to cue this up with a memorandum of law and then I do think that under [chapter 736, Florida Statutes,] that the intent of the parties is certainly relevant to whether or not it was a fraudulent conveyance, and that there's language to that effect embedded in that chapter.
>
>     . . . .
>
> 726.105 codifies that it's specifically required that there be a determination that if a transfer is fraudulent, that it's -- 726.105(1)(a), that it's made with the actual intent to hinder,

a judgment creditor against Mark. *See* § 726.102(4) (" 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."), (5) (" 'Creditor' means a person who has a claim."), (7) (" 'Debtor' means a person who is liable on a claim."); *see also Smith v. Effective Teleservices, Inc.*, 133 So. 3d 1048, 1052 (Fla. 4th DCA 2014) ("[I]t is the 'creditor' who may 'obtain' the remedies provided by [Florida's Uniform Fraudulent Transfer Act] against a transferee." (quoting § 726.108(1), Fla. Stat. (2010))).

delay, or defraud any creditor and/or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation.

So those -- those things have to be determined through hearing from [Mark] and, frankly, also from hearing from my client who paid valuable consideration in exchange for the assignment. We don't know without hearing from [Mark] whether or not he intended at the time of the transfer to actually pay some of the funds received from [TRA] to his creditor who's before you today.[5]

Unmoved, the trial court explained that it was relying on matters in its record, more specifically, the Assignment of Surplus Rights. The trial court entered a written order finding that Mark and TRA schemed "with actual intent to hinder, delay, or defraud a creditor of [Mark] . . . judgment creditor and child support obligee, [Vivian]." The order permitted Vivian to intervene in the probate case, voided the irrevocable assignment, enjoined Mark and TRA from receipt of the surplus funds, and "attache[d] the surplus funds for disbursal to Vivian."

## Analysis

Florida's Uniform Fraudulent Transfer Act (UFTA) provides a creditor a remedy to avoid a debtor's fraudulent conveyance "to the extent necessary to satisfy the creditor's claim." § 726.108(1)(a). UFTA guards against "[a] transfer made or obligation incurred by a debtor as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any

---

[5] TRA's lawyer expounded that "there was a cash buyout . . . in exchange for the [Assignment of Surplus Rights]." TRA's lawyer recounted that the Assignment of Surplus Rights was supplanted by a subsequent agreement: "Just as to that point, I've spoken with the relevant folks at [TRA] and there was a cash buyout according to the -- in exchange for the assignment, so that agreement does not represent the actual transaction that occurred."

4

creditor of the debtor."  § 726.105(1)(a).  "To prevail on a fraudulent transfer claim, a creditor must demonstrate (1) there was a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance—i.e., a 'transfer'—of property which could have been applicable to the payment of the debt due."  *Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir. 2020); *see also* § 726.102(14) (" 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.").

TRA maintains that there is no evidentiary support for a finding of actual intent.  As the moving party, Vivian had the burden of proving a fraudulent conveyance by a preponderance of the evidence.  *See Mejia v. Ruiz*, 985 So. 2d 1109, 1113 (Fla. 3d DCA 2008) ("The proof required to show that a transfer is fraudulent is the preponderance of the evidence standard.").  What she offered was her lawyer's argument and the allegations in her emergency motion.

Unquestionably, a lawyer's argument is no substitute for evidence. *Zirkelbach Constr., Inc. v. Rajan*, 93 So. 3d 1124, 1130 (Fla. 2d DCA 2012); *State v. T.A.*, 528 So. 2d 974, 975 (Fla. 2d DCA 1988) ("[R]epresentations by counsel not made under oath and not subject to cross-examination, absent a stipulation, are not evidence.").  Thus, the trial court had nothing before it demonstrating that Mark intended to defraud Vivian.  *See Hayman v. Weil*, 44 So. 176, 178 (Fla. 1907) ("[T]his court has held many times that the recital, in a motion of any kind, of facts as a ground for the motion, is not evidence upon an appeal of the truth of such facts when the motion has been denied by the lower court. They must be made to appear affirmatively on the record.").

Proving "actual intent" is no small feat. Consequently, "section 726.105(2) provides that fraudulent intent may be presumed from evidence of 'badges of fraud.' " *Beal Bank SSB v. Almand & Assocs.*, 780 So. 2d 45, 60 (Fla. 2001) (citing *Woodell v. TranFlorida Bank*, 717 So. 2d 108 (Fla. 4th DCA 1998)); *see also Mane FL Corp. v. Beckman*, 355 So. 3d 418, 425 (Fla. 4th DCA 2023) ("Because establishing actual intent through direct proof is difficult, the UFTA looks to circumstantial indicia of intent commonly known as 'badges of fraud.' "). Section 726.105(2)(a)-(k) presents a nonexhaustive list of these badges. *Id.* at 426. "While one specific badge of fraud is insufficient to establish fraudulent intent, several of them together may afford a basis to infer fraud." *Id.* (quoting *Nat'l Mar. Servs., Inc. v. Straub*, 979 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013)).

But, the trial court did not identify any badges of fraud. Where does that leave us?

Regrettably, our record discloses a hurried trial court proceeding. Because of a perceived urgency in the situation, corners, seemingly, were cut. Instead of conducting a thorough evidentiary hearing on the issues of actual intent and TRA's defense that it acted in good faith and provided a reasonably equivalent value, the trial court acted quickly to stave off what it saw as impending disaster. *See* § 726.109(1) ("A transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

Expediency, however, cannot strip TRA of its opportunity to meaningfully defend itself. *See Citizens of State v. Fla. Pub. Serv. Comm'n*, 146 So. 3d 1143, 1154 (Fla. 2014) ("[D]ue process cannot be

6

compromised 'on the footing of convenience or expediency.' " (quoting *United Tel. Co. of Fla. v. Beard*, 611 So. 2d 1240, 1243 (Fla. 1993))).

A fulsome evidentiary hearing may well have informed the trial court's decision-making. Instead, TRA was short-changed on its right to be heard. *See Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001).

A meaningful opportunity to be heard includes the right to present evidence bearing on the issues framed by the parties and the right to meet the adverse party's evidence. *See, e.g.*, *Douglas v. Johnson*, 65 So. 3d 605, 607 (Fla. 2d DCA 2011) ("When a court fails to give one party the opportunity to present witnesses or testify on his or her own behalf, the court has violated that party's fundamental right to procedural due process.").

Without an evidentiary hearing, the trial court prevented TRA from marshalling evidence to contest Vivian's allegations. *See* § 726.109(1); *see also Cole v. Cole*, 159 So. 3d 124, 125 (Fla. 3d DCA 2011) (holding that the trial court abused its discretion and violated father's right to due process in ruling without giving him opportunity to present evidence on the parties' competing motions for custody of the minor child).

## Conclusion

We reverse and remand for an evidentiary hearing on Vivian's fraudulent conveyance claim.

Reversed and remanded.

NORTHCUTT and KELLY, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

7