OVERTON, Justice.
GRW Corporation appeals the entry of a judgment validating a lease-purchase agreement as a government financing mechanism. The lease-purchase agreement is to be entered into between the Florida Department of Corrections (the Department) and the U.S. Corrections Corporation for the purpose of constructing a correctional facility in Gadsden County, Florida. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. For the reasons expressed, we affirm the judgment of validation.
In 1991, the Legislature enacted legislation authorizing the construction of a correctional facility in Gadsden County through the use of a lease-purchase agreement as a financing instrument for the building of prisons.[1] Pursuant to the legislative authorization, Gadsden County was to solicit bids to obtain a private vendor to construct and operate a correctional facility for the Department. Financing for the facility would be implemented through a lease-purchase agreement and the operation of the facility would be implemented through a management agreement.
In 1992, bids were submitted to Gadsden County by GRW and U.S. Corrections Corporation. Vendors were required to submit bids with a per diem cost for operation that was at least 10% less than the Department’s per diem cost for operation and with a per diem cost for construction that was at least 3% less than the Department’s per diem cost for construction. The team reviewing the bids found GRW’s bid to be non-responsive because GRW’s proposed construction cost exceeded the Department’s construction cost. Consequently, GRW’s bid was disqualified. U.S. Corrections Corporation then was awarded the contract. Subsequently, GRW filed several bid protests with Gadsden County, all of which the County rejected. On August 20,1992, GRW received final notification that the County had rejected GRWs protests. GRW filed no circuit court action regarding the protest rejection.
In June 1993, the Department filed a validation proceeding with the circuit court pursuant to chapter 75, Florida Statutes (1993). GRW was the only party to oppose the validation. In the trial court proceeding, GRW contended that the complaint for validation failed to set forth specific information required by the legislative authorization and that the Department refused to process GRWs bid protest. After a hearing on the validation proceedings, the trial judge entered a Final Judgment of Validation confirming the lease-purchase agreement. In addition to validating the lease-purchase agreement, the trial judge held that GRW was barred from renewing any bid protest in this cause and that GRW had no standing to challenge the County’s vendor selection procedure because it failed to contest the bid procedure in circuit court within thirty days of the County’s decision. GRW appealed the judgment to this Court.
GRW raises three issues in this appeal, claiming that: (1) the lease-purchase agreement lessor in this case did not meet the necessary legal requirements; (2) the terms of the lease-purchase agreement did not comply with the mandates of the legislative authorization or were incomplete; and (3) the trial court erroneously considered issues that were collateral to this proceeding.
In its first claim, GRW contends that the lease-purchase agreement could not be validated because the lessor listed in the lease was inappropriate. The lessor set forth in the proposed lease-purchase agreement was “U.S. Corrections Leasing Co., Inc.,” rather than U.S. Corrections Corporation. Because U.S. Corrections Leasing Co., Inc., is a yet-to-be-ereated subsidiary of U.S. Corrections Corporation, and because the legislative authorization states that the Department shall enter into a lease-purchase agreement “with the private vendor selected by the procurement”[2] procedure, GRW contends that the Department can enter into a lease-agreement only with U.S. Corrections *720 Corporation as the private vendor selected. GRW asserts that the language of the legislative authorization implicitly requires the existence of a viable entity at the time of the procurement process and that deviation from this requirement violates the limitations of the authorization. For this reason, GRW claims that the validation failed to meet the necessary legal requirements of the legislative authorization.
In the Final Judgment of Validation, the trial judge rejected this claim, specifically finding that U.S. Corrections Leasing Co., Inc., would be a wholly-owned subsidiary of U.S. Corrections Corporation and would be controlled by U.S. Corrections Corporation. We note that the use of a sole-purpose, wholly-owned subsidiary of a parent entity in the type of lease-purchase agreement at issue is not unusual. See, e.g., State v. Brevard County, 539 So.2d 461 (Fla.1989). In fact, this type of arrangement is beneficial to the citizens of this State because it protects the facility being constructed from becoming subject to judgment liens or other liabilities incurred by the parent corporation.
We note that after this appeal was filed the Legislature enacted chapter 93 — 418, Laws of Florida, ratifying and affirming the selection process at issue here. That law provides in pertinent part:
The process heretofore employed by the Department of Corrections in conjunction with local government to select a private vendor to design, construct, and manage a correctional facility pursuant to Special Appropriation 1934C contained in section 2B of chapter 91-193, Laws of Florida, is hereby ratified and affirmed. The Department of Corrections shall forthwith execute such documents, including a lease-purchase agreement with the private vendor or its successor wholly-owned subsidiary, as are necessary to facilitate and expedite construction of the correctional facility.
Ch. 93-418, § 1, Laws of Fla. (emphasis added). As indicated by the underlined language, this legislation specifically approves the use of a successor wholly-owned subsidiary in this case. Given the benefits inherent in the use of a wholly-owned subsidiary and the Legislature’s specific approval of such a lessor, we agree with the trial court and reject GRW’s argument that the Department is implicitly without authority to enter into the lease-purchase agreement with U.S. Corrections Leasing Co., Inc.
Next, GRW claims that the Department has not complied with the requirements of the legislative authorization because it failed to include certain required provisions in the lease-purchase agreement and failed to fill in all of the blanks in the agreement. Because the Department has not complied with those requirements, GRW insists that the validation was inappropriate. The scope of judicial review in validation proceedings focuses on whether: (1) a public body has the authority to incur the obligation; (2) the purpose of the obligation is legal; and (3) the proceedings authorizing the obligation were proper. Risher v. Town of Inglis, 522 So.2d 355 (Fla.1988); State v. City of Daytona Beach, 431 So.2d 981 (Fla.1983). The purpose of these judicial inquiries is to facilitate an adjudication as to the regularity and validity of the steps taken to issue the indebtedness in order to assure marketability of the financing instrument. State v. City of Miami, 41 So.2d 888 (Fla.1949); State v. City of Sarasota, 154 Fla. 250, 17 So.2d 109 (1944). The fact that certain terms or provisions are not included in the document evidencing the indebtedness does not necessarily preclude validation of the proceedings. See, e.g., Dorman v. Highlands County Hosp. Dist., 417 So.2d 253 (Fla.1982) (proceedings involving trust indenture were valid even though the trust indenture contained numerous blanks which, presumably, would be filled in at the time of execution); City of Miami, 41 So.2d at 889 (it is common knowledge that bonds are sometimes validated before being sold or before provisions for redemption are included and before dates and maturities are determined).
In this case, the Legislature directed the Department to enter into a lease-purchase agreement and a separate management agreement. Ch. 91-193, § 2B, at 1885, Laws of Fla. As noted by the Department, some requirements contained in the legislative authorization must be included in the lease- *721 purchase agreement but have not yet been determined. Other terms are necessarily included in the management agreement, a document that is not part of the financing instrument and, consequently, not before this Court for review. Although the items included in the lease-purchase agreement and the management agreement must fully comply with the requirements of the legislative authorization before the issuance of the certificates of participation through which the financing is completed, they need not be complete for purposes of this validation provided the regularity and validity of the steps taken to issue the indebtedness at issue were proper. Here, the trial judge, after reviewing the proceedings in this ease, appropriately determined that the Department had the authority to enter into the lease-purchase agreement; that the purpose of that agreement was legal; and that the proceedings authorizing the obligation were proper. We fully agree with those findings and reject GRWs contention that the Department failed to comply with the requirements of the legislative authorization.
Finally, we address GRWs assertion that, because issues regarding GRWs protest of the bid award were collateral to this validation proceeding, the trial judge erred in considering and ruling against GRW on those issues. Specifically, GRW claims that the trial judge erroneously found that GRW was barred from renewing any protest of the bid award.
We fully agree that matters collateral to a bond validation proceeding are not to be addressed by the court reviewing the validation proceedings. City of Daytona Beach; Zedeck v. Indian Trace Community Dev. Disk, 428 So.2d 647 (Fla.1983). As indicated previously, the judicial inquiry in this validation proceeding is limited to the determination of whether the Department has the authority to execute the lease-purchase agreement, whether the purpose of the lease-purchase agreement is legal, and whether the proceedings authorizing that obligation were proper. Chapter 75, however, expressly anticipates that the judiciary, in completing such an inquiry, will hear “all questions of law and fact” that may cast doubt on the legal validity of the indebtedness. § 75.07, Fla.Stat. (1993). See People Against Tax Revenue Mismanagement, Inc. v. County of Leon, 583 So.2d 1373, 1374 n. 2. (Fla.1991) (“Chapter 75, Florida Statutes, clearly contemplates that a bond validation proceeding is a proper vehicle for quieting all legal and factual issues that may cast doubt on the legal validity of a bond issue.”). Such a determination by the judiciary ensures that all issues relating to the validity of the obligation are forever put to rest so that no question affecting the validity of the indebtedness and financing agreements may subsequently be raised. North Shore Bank v. Town of Surfside, 72 So.2d 659 (Fla.1954); State v. City of Miami 113 Fla. 280, 152 So. 6 (1933).
We find that the issue of GRWs right to protest the bid procedure is not collateral to this proceeding because it goes directly to the legality of the special type of financing method at issue here. The bid procedure was clearly a basic part of this unique financing arrangement. Consequently, we hold that the trial judge had jurisdiction to find that GRW Corporation is barred from renewing any protest against the bid award.
For the reasons expressed, we affirm the trial court’s Final Judgment of Validation in its entirety.
It is so ordered.
BARKETT, C.J., McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.

. Ch. 91-193, § 2B, at 1884, Laws of Fla. (Specific Appropriation 1934C).

. Ch. 91-193, § 2B, at 1885, Laws of Fla. (Specific Appropriation 1934C).