790 So.2d 1042 (2001)
The CITY OF OLDSMAR, Appellant,
v.
The STATE of Florida and The Florida Department of Transportation, Appellees.
No. SC00-2695.
Supreme Court of Florida.
July 12, 2001.
*1044 George L. Spofford, IV and Trenton H. Cotney of Glenn Rasmussen Fogarty & Hooker, P.A., Tampa, FL, for Appellant.
Bernie McCabe, State Attorney, and C. Marie King, Assistant State Attorney, Sixth Judicial Circuit, Clearwater, FL, on behalf of the State of Florida; and Pamela S. Leslie, General Counsel, and Marianne A. Trussell, Deputy General Counsel, Tallahassee, FL, on behalf of the State of Florida, Department of Transportation, for Appellees.
PARIENTE, J.
The City of Oldsmar ("City") appeals a final order of the Sixth Judicial Circuit Court for Pinellas County dismissing the City's complaint brought pursuant to chapter 75, Florida Statutes (2000), as a bond validation proceeding. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. For the reasons that follow, we conclude that the City may not utilize chapter 75 to seek to invalidate its own prior written agreement and, accordingly, we affirm the circuit court's order of dismissal.

BACKGROUND
In 1995, the Florida Department of Transportation ("DOT") began negotiations with various parties regarding a roadway improvement project in Pinellas County. As part of the roadway expansion, water and sewer utility lines owned by the City had to be relocated. The City entered into a written Joint Project Agreement ("JPA") with DOT in which the City agreed to pay DOT for the work performed to relocate the City's utilities that were located on DOT's right-of-way.
The JPA provided that DOT would ensure that the necessary adjustments and the relocation of the City's utilities would be performed by the contractor DOT hired to complete the project. The JPA also provided that the City would pay DOT $1,094,817.79, which was the estimated cost of relocating the utility lines, in advance of the construction project and that DOT would utilize this money to pay the contractor to perform the work on the City's utilities. In addition to the City agreeing to pay the initial amount, at the end of the 715-day project, the JPA also *1045 required the City to reimburse DOT for all amounts advanced by DOT, plus interest. Pursuant to the JPA, the City also was required to indemnify DOT for any additional construction expenses, damages, and attorneys' fees incurred as a result of DOT's involvement with the City's utility work.
After the completion of the project, the contractor sued DOT in the Thirteenth Judicial Circuit Court for Hillsborough County ("Hillsborough lawsuit") for damages due to delays in completing the project. In the complaint, dated March 19, 1999, the contractor alleged that it had incurred delays and additional costs as a result of erroneous plans that the City submitted to DOT. The contractor sought an additional $6,000,000 from DOT. DOT in turn filed a third-party complaint against the City alleging that any damages resulting from the erroneous plans were the liability of the City.[1]
In addition to filing an answer, which contained affirmative defenses, and a counterclaim against DOT seeking relief under the provisions of the JPA, the City also moved for summary judgment. The City claimed that the JPA violated article VII, section 12 of the Florida Constitution,[2] because the JPA constitutes a "long term pledge of the City's ad valorem taxes and, as such, is void ab initio." The Hillsborough County Circuit Court denied the City's motion for summary judgment on the grounds that genuine issues of material fact existed. The Hillsborough lawsuit still is pending, as are the City's affirmative defenses.
After the Hillsborough Circuit Court denied the City's motion for summary judgment, in August 2000, the City filed the complaint that is the subject of this appeal pursuant to chapter 75, Florida Statutes, in the Sixth Judicial Circuit for Pinellas County ("Pinellas lawsuit"), alleging, as it did in the Hillsborough County lawsuit, that the JPA violated article VII, section 12, Florida Constitution, and is therefore void. The only named defendant in this suit was the State of Florida. The trial court issued an order to show cause, mandating that the Office of the State Attorney appear and represent the State in this matter.[3]
In its response to the order to show cause, the State, through the State Attorney, sought dismissal of the complaint, asserting that the City was without authority pursuant to chapter 75 to attempt to invalidate its prior written contract with DOT because the City's action was not a bond validation proceeding. The State also argued that the City's complaint improperly failed to name DOT as an indispensable party and that the State Attorney's office *1046 did not have the authority to represent the interests of DOT. The State argued that dismissal for lack of jurisdiction was appropriate under the circumstances.
DOT learned of the Pinellas lawsuit after being notified by the State Attorney for the Sixth Circuit. DOT then filed a motion to intervene, dismiss, or abate the City's lawsuit in Pinellas County. At a hearing on those motions, DOT argued that the Pinellas lawsuit involved a duplication of the facts, issues, and legal positions presented in the Hillsborough lawsuit. In addition, DOT argued that the Pinellas lawsuit was an improper attempt by the City to use chapter 75 to avoid its contractual obligation. DOT requested that it be allowed to intervene and, alternatively, should the trial court deny its motion to dismiss, that the Pinellas lawsuit be abated pending the outcome of the Hillsborough lawsuit.
In response, the City asserted that DOT was not an indispensable party to the Pinellas lawsuit and the City did not have a duty to advise DOT of the Pinellas lawsuit or name DOT as a defendant. Nevertheless, the City stated that it did not oppose DOT's intervention as long as the intervention did not delay these proceedings. The City conceded that the purpose of the complaint was to invalidate the JPA and further conceded that the validity of the JPA currently was being litigated in the pending Hillsborough lawsuit, where the City raised this issue as an affirmative defense. The City also admitted that the Hillsborough County Circuit Court's denial of the City's motion for summary judgment motivated the filing of the Pinellas lawsuit, and the City conceded that the Pinellas lawsuit was in fact an attempt to avoid potential liability in the Hillsborough lawsuit.
At the conclusion of the hearing, the Pinellas County Circuit Court granted DOT's motion to intervene and motion to dismiss, stating in pertinent part that it did not have jurisdiction to proceed, that it did not view the complaint as a proper chapter 75 proceeding, and the contract matter was being litigated in Hillsborough County.[4] The City appealed the circuit court's order directly to this Court, invoking our mandatory jurisdiction under article V, section 3(b)(2).

ANALYSIS
The Florida Constitution vests this Court with mandatory jurisdiction to hear appeals from final judgments in bond validation proceedings. Specifically, article V, section 3(b)(2) of the Florida Constitute states that, when provided by general law, this Court "shall hear appeals from final judgments entered in proceedings for the validation of bonds or certificates of indebtedness." The general law that provides *1047 this Court with jurisdiction to hear bond validation appeals is section 75.08, Florida Statutes (2000), entitled "Appeal and review." Section 75.08 provides: "Any party to the [bond validation] action whether plaintiff, defendant, intervenor or otherwise, dissatisfied with the final judgment, may appeal to the Supreme Court within the time and in the manner prescribed by the Florida Rules of Appellate Procedure."
The narrow issue in this case is whether the City's complaint seeking to invalidate an executed and fully performed contractual obligation was properly brought pursuant to the bond validation provisions of chapter 75. Unlike a traditional bond validation proceeding where the governmental entity seeks to have the circuit court validate a proposed bond or certificate of indebtedness, in this case the City is attempting to utilize the unique features of chapter 75 to invalidate its own agreement with DOT and to avoid paying its incurred debt. Furthermore, the City has invoked this Court's mandatory jurisdiction under article V, section 3(b)(2) in an attempt to obtain direct and immediate review of the circuit court's order of dismissal, despite the fact that the legality of the JPA currently is being litigated in the Hillsborough lawsuit.
As we explained in State v. City of Miami, 103 So.2d 185, 188 (Fla.1958): "Proceedings to validate bonds are purely statutory. The power of the courts with reference thereto must be found within the statute itself." Chapter 75 is entitled "Bond Validation." We thus first turn to the specific provisions of this chapter to determine whether the Legislature intended its provisions to be invoked by a governmental entity that seeks to invalidate a fully performed contractual agreement, as in this case.
Section 75.01, Florida Statutes (2000), sets forth that "[c]ircuit courts have jurisdiction to determine the validation of bonds and certificates of indebtedness and all matters connected therewith." Section 75.02, Florida Statutes (2000), entitled "Plaintiff," lists who may bring the cause of action and provides in pertinent part:
Any county [or] municipality ... authorized by law to issue bonds, may determine its authority to incur bonded debt or issue certificates of debt and the legality of proceedings in connection therewith, including assessment of taxes levied or to be levied....
(Emphasis supplied.)
Section 75.03, Florida Statutes (2000), entitled "Condition precedent," provides that
[a]s a condition precedent to filing of a complaint for the validation of bonds or certificates of debt, the county [or] municipality... shall cause an election to be held to authorize the issuance such bonds or certificates ... or, when permitted by law, adopt an ordinance, resolution or other proceeding providing for the issuance of such bonds or certificates in accordance with law.
Section 75.04, Florida Statutes (2000), sets forth the requirements for the complaint, including that the "complaint shall set out the plaintiffs authority for incurring the bonded debt or issuing certificates of debt ... the amount of the bonds or certificates of indebtedness to be issued and the interest they are to bear." (Emphasis supplied.)
Section 75.09, Florida Statutes (2000), provides that the final judgment in a bond validation proceeding is
forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby, including all property owners, taxpayers and citizens of the *1048 plaintiff, and all others having or claiming any right, title or interest in the property to be affected by the issuance of said bonds, certificates or other obligations... and the validity of said bonds, certificates or other obligations... or revenues pledged for the payment thereof ... shall never be called in question in any court by any person or party.
Thus, a reading of chapter 75 as a whole, see Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452, 455 (Fla.1992), indicates that the provisions of chapter 75 are intended to provide a unique statutory mechanism to a governmental entity that seeks to incur bonded debt or to issue certificates of indebtedness. All of the language of the statutory provisions is prospective in nature.[5] There is no indication from the statutory text that chapter 75 was intended to be available to a governmental entity that seeks to invalidate a pre-existing and fully performed contract that gives rise to an indebtedness.
The statutory language restricting the use of chapter 75 to prospective challenges is consistent with what we have stated to be the purpose of chapter 75 bond validation proceedings:
The purpose of the statutory validation proceedings is to provide a forum and a course of legal procedure to which any county, municipality, taxing district, or other political district or subdivision may resort for the purpose of determining whether or not any proposed obligation in the form of a bonded debt, or in the form of a certificate of indebtedness, may be validly issued by it in the form proposed in its ordinance, resolution, or other action taken under the law as the initiatory step for issuance of an obligation of that character. And in every such proceeding it is the intent of the statute that such judicial investigation of the pleaded validation proposal shall be made, that the court may determine therefrom whether or not that which is pleaded as petitioner's proposal is within the legal authority of the petitioner to do, so that, if it be adjudged valid, the validity thereof shall never again be subject to be called in question in any court in this state.

State v. City of Miami, 113 Fla. 280, 152 So. 6, 8 (1933) (emphasis supplied.)[6]
*1049 By invoking the protective provisions of chapter 75, a governmental entity can ensure the marketability of the proposed bonds or certificates of indebtedness by thereafter foreclosing an attack on their validity. As we explained in GRW Corp. v. Department of Corrections, 642 So.2d 718, 720 (Fla.1994), "The purpose of these judicial inquiries is to facilitate an adjudication as to the regularity and validity of the steps taken to issue the indebtedness in order to assure marketability of the financing instrument." See also State ex rel. Harrington v. City of Pompano, 136 Fla. 730, 188 So. 610, 626 (1938) ("The purpose of the statute ... providing for judicial validations of bona fide issues of duly authorized governmental bonds and certificates of indebtedness is to facilitate bona fide sales of valid duly authorized bonds and certificates by means of authorized judicial decrees conclusively adjudicating the validity of such duly authorized bonds and certificates as issued....")
Moreover, the very fact the Florida Constitution vests this Court with mandatory jurisdiction to review direct appeals from final judgments entered in proceedings for the validation of bonds or certificates of indebtedness further supports the conclusion that the purpose of chapter 75 proceedings is to facilitate bona fide sales of duly authorized bonds and certificates and not to facilitate the determination of the invalidity of a fully performed agreement. It is rare indeed for this Court to be vested with mandatory jurisdiction over direct appeals from circuit court orders.[7] Thus, this mandatory grant of jurisdiction to review final orders in chapter 75 proceedings supports a conclusion that those proceedings are circumscribed in scope and purpose. Our review in bond validation cases is limited to the following three inquiries: (1) whether the public body has the authority to incur the obligation or to "issue the bonds"; (2) whether the purpose of the obligation is legal; and (3) whether the bond issuance complies with the requirements of the law. See Boschen v. City of Clearwater, 777 So.2d 958, 962 (Fla.2001).
Not only is our review of chapter 75 cases mandatory, but the appellate procedures provide for expedited review of these cases before this Court. Section 75.08, the section that authorizes direct review to the Supreme Court, provides that the time limit for appeal shall be as prescribed by the Florida Rules of Appellate Procedure. These rules recognize the necessity for prompt and expeditious disposition of bond validation proceedings. Specifically, Florida Rule of Appellate Procedure 9.110(i) provides for an exception to the normal appeals time frame for bond validation proceedings that contemplates expedited review by providing that "the record shall not be transmitted unless ordered by the supreme court" and providing that the initial brief accompanied by appendix shall be served within twenty days of filing the notice of appeal.[8] The *1050 notes to this rule explain that this subdivision provides "an expedited procedure in appeals as of right to the supreme court in bond validation proceedings." In addition, Florida Rule of Appellate Procedure 9.330(c), which governs motions for rehearing and clarification, provides for the expedited resolution of motions for rehearing and clarification in bond validation proceedings not only by providing shortened time limits for filing, but also by providing that a "timely motion shall receive immediate consideration by the court and, if denied, the mandate shall issue forthwith." (Emphasis supplied.) These unique appellate rules applicable only to bond validation proceedings further support the conclusion that the scope of chapter 75 and our direct and mandatory review of those proceedings is intended only for instances where a governmental entity requires an advance determination of its authority to issue bonds.
This expedited review facilitates an adjudication as to the validity of bonds so as to provide assurance of the marketability of the bonds. Accordingly, this limited review advances important governmental interests. In contrast, in this case, invoking this Court's mandatory jurisdiction and expedited review is unwarranted given that the debt already has been incurred and the validity of the JPA currently is being litigated in the Hillsborough County case.
Furthermore, none of the cases relied on by the City involve an issuing authority seeking to invalidate its own fully executed and performed contractual obligations. Our bond validation cases fall into three general categories: (1) chapter 75 proceedings instituted by the issuing governmental entity seeking to validate its proposed bonds, certificates of indebtedness, or other government financing mechanism; see generally State v. Suwannee County Dev. Auth., 122 So.2d 190 (Fla.1960) (bond validation proceeding instituted by county development authority to validate its anticipated revenue certificates); see also GRW Corp. v. Department of Corrections, 642 So.2d 718 (Fla.1994) (Department of Corrections brought a proceeding to validate proposed lease-purchase agreement as a government financing instrument); (2) chapter 75 proceedings to validate proposed agreements closely related to proposed or previously validated bond issues, see generally State v. City of Daytona Beach, 431 So.2d 981 (Fla.1983) (chapter 75 proceeding brought to validate proposed interlocal agreement to be used to support a previously validated bond); and (3) non-chapter 75 proceedings (injunctions, declaratory judgments, etc.) brought by third parties in which the issue of the validity of the underlying agreement is litigated. See generally Frankenmuth Mut. Ins. Co. v. Magaha, 769 So.2d 1012 (Fla.2000) (insurance company filed for declaratory relief); Andrews v. City of Winter Haven, 148 Fla. 144, 3 So.2d 805 (1941) (declaratory judgment action); Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356 (1936) (injunction action to prevent the city from issuing certain debentures). This case does not fall into any of these three categories, and we have discovered no historical precedent for allowing a governmental entity to avail itself of chapter 75 to invalidate its own fully executed and performed contractual obligation.
Although we conclude that chapter 75 is limited in scope and purpose, as is our mandatory jurisdiction over these cases, we also acknowledge that nothing prevents the City from raising in the Hillsborough *1051 lawsuit the invalidity of the JPA. For example, this is what happened in Frankenmuth, 769 So.2d at 1014-15, where the lessor of computer equipment brought a federal court action against the county, which was the lessee of the equipment, and its clerk to recover payment. The county raised various defenses, including an argument that the long-term lease agreement was a violation of article VII, section 12, of the Florida Constitution because it pledged ad valorem tax dollars as its source of payment. See id. at 1017-18. This Court decided that issue in favor of the county, not in the context of a chapter 75 proceeding or pursuant to our mandatory review set forth in article V, section 3(b)(2), but rather based on the certified questions to this Court from the federal appellate court pursuant to our jurisdictional grant in article V, section 3(b)(6). See id. at 1014.
We conclude that the provisions of chapter 75 are not available to the City given the factual circumstances of this case. Not only is this attempt by the City contrary to the purpose of chapter 75, but it misuses the discrete and narrow grant of this Court's mandatory jurisdiction. Our conclusion is based upon the statutory language of chapter 75 and the Florida Rules of Appellate Procedure governing bond validation proceedings, the purpose and policy behind chapter 75 proceedings, and our historical understanding of chapter 75 proceedings as exemplified through case law. Accordingly, having determined that the City could not utilize chapter 75 to invalidate the JPA, we expressly do not reach the issue of whether the JPA is a long-term bond or certificate of indebtedness subject to and violative of article VII, section 12 of the Florida Constitution, as that issue is not properly before us. However, as discussed above, today's decision does not prevent the City from raising the invalidity of the JPA as an affirmative defense, as it has done in the pending Hillsborough litigation.
Therefore, we affirm the circuit court's order of dismissal in this case.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] According to DOT's allegations, the initial $1,094,817.79 advanced by the City to DOT would have been and should have been the only monies paid by the City. DOT contends that the reason that the City became liable for additional monies was because the City provided inaccurate plans that caused project delays and damages.
[2] Article VII, section 12 of the Florida Constitution, provides in pertinent part:

Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation....
[3] This procedure is in accord with the provisions of section 75.05(1), Florida Statutes (2000), which specifically provides for the state attorney to respond to whether the bonds or certificates in question are duly authorized.
[4] The circuit court also found that "because the Hillsborough County Case is still pending, the doctrine of collateral estoppel bars the instant action, which constitutes a second reason supporting the dismissal of this action." This ruling was erroneous. Although the pendency of an earlier-filed action raising the same issues may have been a basis to abate or stay the Pinellas County lawsuit, the doctrine of collateral estoppel is not applicable because the issue as to the legality of the JPA under the Florida Constitution is still being litigated. "Collateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided." Department of Health & Rehabilitative Services v. B.J.M., 656 So.2d 906, 910 (Fla.1995). Under Florida law, collateral estoppel, or issue preclusion, applies when "the identical issue has been litigated between the same parties or their privies." Gentile v. Bauder, 718 So.2d 781, 783 (Fla.1998). In addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction. See B.J.M., 656 So.2d at 910.
[5] The City contends that a change to the language of section 75.02 indicates that validation proceedings may be brought after the debt has been incurred. Specifically, the City notes that the 1927 version of section 5106, Compiled General Laws, which was the predecessor statute to section 75.02 and which was repealed in 1967, authorized a bond validation suit for any public entity "desiring to incur any bonded debt or to issue certificates of indebtedness." By contrast, as noted above, the current version of section 75.02 provides for validation suits to determine the legality of "taxes levied." The City contends that this change reflects the fact that the current version of section 75.02 contemplates a judicial determination of the validity of the bond after the fact. We disagree. Although the current statutory language of section 75.02 may not be as explicit as its predecessor with regard to the prospective nature of chapter 75 proceedings, the current statutory language, which provides for validation proceedings "to incur bonded debt" and to "issue certificates of debt," clearly contemplates a prospective action to determine the validity of a bond or other debt instrument.
[6] In City of Miami, the City brought a proceeding pursuant to 5106-5112, Compiled General Laws (1927), the predecessors of sections 75.02 through 75.12, Florida Statutes (2000), for the validation of certain water revenue certificates. Although the Legislature substantially revised the provisions of chapter 75 in 1967, see ch. 67-254, § 25, at 641-46, Laws of Fla. (1967), the purpose of the amendments, as reflected in the title and preamble of chapter 67-254, was to delete "provisions contained in 1967 Florida rules of civil procedure, ... provisions preempted by or in conflict with said rules, ... [and] obsolete and unnecessary language" in order to "simplify procedure, to aid dispatch in litigation and in the dispensation of justice by revising all chapters of the Florida Statutes relating to civil procedure."
[7] The district courts of appeal, pursuant article V, section 4 of the Florida Constitution, are vested with direct appellate jurisdiction over the overwhelming majority of final orders from the trial courts. The only other category of direct appeals from final judgments of trial courts is pursuant to article V, section 3(b)(1), that provides for direct review to this Court of final judgments imposing the death penalty.
[8] This expeditious procedure compares to Florida Rules of Appellate Procedure 9.110(e) and (f), which govern most other final appeals and which prescribes that the record is to be prepared within 50 days of filing the notice, the initial brief is to be filed within 70 days of filing of the notice, and the record is to be transmitted to the court within 110 days of filing the notice.