804 So.2d 544 (2002)
Sam GOODMAN and Katherine Goodman, Appellants,
v.
ALDRICH & RAMSEY ENTERPRISES, INC., Appellee.
No. 2D00-3604.
District Court of Appeal of Florida, Second District.
January 16, 2002.
*545 Kimberly L. Boldt of Boldt & Associates, P.A., Fort Lauderdale, for Appellants.
William J. Hazzard of Asbell, Coleman, Ho & Hazzard, P.A., Naples, for Appellee.
ALTENBERND, Judge.
Sam Goodman and his wife, Katherine Goodman, appeal a partial summary judgment entered in favor of Aldrich & Ramsey Enterprises, Inc. ("Aldrich & Ramsey"), in an action for proceedings supplementary.[1] The summary judgment held the Goodmans personally liable for a debt owed by Prestige Custom Home Builders, Inc. ("Prestige"), based upon a finding that the Goodmans were collaterally estopped from litigating the issues presented. Because the elements necessary for collateral estoppel were not met, we reverse the summary judgment and remand for further proceedings.
Sam Goodman is the president and sole shareholder of Prestige Custom Home Builders. Prestige entered into two joint venture agreements with Aldrich & Ramsey. Aldrich & Ramsey brought two lawsuits against Prestige, alleging that Prestige had breached the agreements and seeking damages for the breaches. After some initial activity in these cases, Aldrich & Ramsey obtained two default judgments against Prestige, plus a third judgment for attorneys' fees and costs. To enforce these judgments, Aldrich & Ramsey filed a lawsuit for proceedings supplementary against various parties, including the Goodmans.
At the time the first two lawsuits were commenced, Prestige owned a piece of property subject to a $4500 mortgage. This property was referred to as the "Naples Manor" property. After Aldrich & Ramsey received a final default judgment in its first lawsuit, the holder of the Naples Manor property mortgage assigned its rights under the mortgage to Jersey Financial Corporation. Jersey Financial was partially owned by Dennis Gold, an attorney who represented Prestige at a time when the two lawsuits brought by Aldrich & Ramsey against Prestige were pending. Shortly after the mortgage was assigned to Jersey Financial, Prestige defaulted on the mortgage and Jersey Financial sought foreclosure. Prestige did not actively defend against the foreclosure. Aldrich & Ramsey, however, having been designated as an additional defendant due to the judgments they received against Prestige, answered and alleged that its interest in the property was superior to Jersey Financial's because Jersey Financial had "unclean hands." Because Prestige admitted defaulting on the mortgage, the foreclosure action went to trial based solely upon Aldrich & Ramsey's claim of unclean hands against Jersey Financial. Following an evidentiary hearing, the foreclosure court denied Jersey Financial's petition for foreclosure. Aldrich & Ramsey now claims that this foreclosure action estops the Goodmans from defending against the present action.
*546 In the foreclosure action, in order to prove Jersey Financial's "unclean hands," Aldrich & Ramsey presented evidence of three separate transactions. First, Aldrich & Ramsey sought to prove the foreclosure action was instituted solely to shelter the Naples Manor property from execution by Aldrich & Ramsey. Second, Aldrich & Ramsey presented evidence that Prestige had transferred a separate piece of property, referred to as the Jaeger Property, to the Goodmans while the judgments against Prestige remained unpaid. The third-party mortgage on this property was thereafter assigned to Jersey Financial, and the property then sold to Evitar Properties, Inc., a company in which Mr. Gold was an officer. Evitar purportedly paid the Goodmans $80,000 for the Jaeger property. Third, Aldrich & Ramsey presented evidence that two Prestige bank accounts set up to service unrelated construction accounts had been closed and the funds transferred to another corporation, MKS Warehouse Enterprises, Inc., to prevent execution by Aldrich & Ramsey on those funds. MKS Warehouse Enterprises was owned by the Goodmans and Martin Schmayer, Katherine Goodman's son.
The circuit court hearing the foreclosure case denied Jersey Financial's complaint for foreclosure based upon a finding of unclean hands. That court concluded that Prestige, through Sam Goodman, had engaged in a series of transactions, aided by Jersey Financial, to defraud Aldrich & Ramsey by hiding assets that would otherwise be subject to execution to satisfy Aldrich & Ramsey's judgments. Aldrich & Ramsey then filed the complaint in this cause, seeking to hold Sam and Katherine Goodman, MKS Warehouse Enterprises, and Martin Schmayer personally liable for the judgments against Prestige.
Aldrich & Ramsey's complaint in this action alleged four counts: (1) a proceeding supplementary against the Goodmans based upon the transfer of the Jaeger property from Prestige to them individually; (2) an action to pierce Prestige's corporate veil to hold Sam Goodman individually liable for the debts of the corporation; (3) an action to pierce MKS Warehouse Enterprises' corporate veil to hold Sam and Katherine Goodman and Martin Schmayer, individually, liable; and (4) an action for damages against the Goodmans and Martin Schmayer for a conspiracy to defraud Aldrich & Ramsey.
Aldrich & Ramsey filed a motion for partial summary judgment relating to counts 1 and 2, and on count 4 as it related to the Goodmans. In support of the motion, Aldrich & Ramsey asked the circuit court to take judicial notice of the entire record in the foreclosure case. The circuit court granted the request for judicial notice and found that collateral estoppel applied to bar relitigation of the issues presented in this case. Accordingly, the circuit court granted partial summary judgment. It entered a judgment in favor of Aldrich & Ramsey and against Sam and Katherine Goodman, jointly and severally, in the amount of $190,264.83.[2]
For the doctrine of collateral estoppel to apply to bar relitigation of an issue, five factors must be present: (1) an identical issue must have been presented in the prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate *547 that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated. Holt v. Brown's Repair Serv., Inc., 780 So.2d 180 (Fla. 2d DCA 2001). See also City of Oldsmar v. State, 790 So.2d 1042 (Fla.2001). In this case, these factors were not met, and collateral estoppel did not bar the Goodmans from litigating the issues presented by this complaint.
First, the parties in the foreclosure action and in the present action are not identical. Katherine Goodman was not a party to the foreclosure action at all.[3] Second, the identical issues were not presented in both cases. In the foreclosure action, the decisive issue presented was whether Jersey Financial instituted the foreclosure action to defraud Aldrich & Ramsey and to prevent execution of its judgment on the Naples Manor property. In contrast, this case has little to do with the Naples Manor property. The decisive issues presented in this case are (1) whether Prestige's transfer of the Jaeger property to the Goodmans was made to delay, hinder, or defraud Aldrich & Ramsey such that the conveyance should be declared void and the property made subject to execution, see § 56.29(6), Fla. Stat. (1999), or § 726.105, Fla. Stat. (1999); (2) whether Sam Goodman organized or employed Prestige to mislead creditors or to work a fraud upon them, such that Prestige's corporate veil can be pierced and Sam Goodman held personally liable for its debts to Aldrich & Ramsey, see Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1120 (Fla.1984); and (3) whether the Goodmans engaged in a conspiracy to defraud Aldrich & Ramsey.
Although Aldrich & Ramsey presented evidence in the foreclosure action of other suspicious transactions to support their claim, the resolution of those ancillary issues was not before the foreclosure court and of only tangential relevance to its decision to deny Jersey Financial's complaint for foreclosure due to unclean hands. To the extent the foreclosure court made findings regarding those ancillary transactions, those findings were not critical and necessary to the foreclosure action.
Finally, the Goodmans were not given a full and fair opportunity to defend themselves in the foreclosure action on all of the claims now brought by Aldrich & Ramsey against them individually, nor were these claims actually litigated to a resolution. As discussed above, Katherine Goodman was not even a party to the foreclosure action. Because Prestige admitted defaulting on the Naples Manor property mortgage, Sam Goodman appeared in the foreclosure action simply as a witness as to whether Jersey Financial had unclean hands. Sam Goodman's stake in the outcome of the foreclosure suit against Prestige was therefore negligible, and he had no reason or opportunity to defend himself vigorously against other allegations of wrongdoing in unrelated transactions.
Because the factors necessary to apply the doctrine of collateral estoppel were not *548 present, we reverse the partial summary judgment and remand for further proceedings consistent with this opinion.
Reversed and remanded.
WHATLEY and CASANUEVA, JJ., concur.
NOTES
[1] The summary judgment is "partial" because it does not address claims made against MKS Warehouses, Inc., and Martin Schmayer, two defendants in the action below. These parties have not participated in this appeal. The partial summary judgment is a final appealable order because it relates to Sam and Katherine Goodman and resulted in a final judgment being entered against them in the full amount sought by the plaintiff.
[2] Because we find that summary judgment was inappropriate, we do not address the propriety of holding Katherine Goodman responsible for Prestige's entire debt based solely upon a finding that she received a fraudulent transfer of a piece of property from Prestige that was subsequently sold for $80,000.
[3] All parties to this appeal appear to assume that Sam Goodman was a party in both proceedings, even though he appears as an individual in this proceeding and Prestige was the real party in the prior proceeding. In Stogniew v. McQueen, 656 So.2d 917, 919 (Fla. 1995), the supreme court held collateral estoppel applies when "the identical issue has been litigated between the same parties or their privies." See also R.D.J. Enters., Inc. v. Mega Bank, 600 So.2d 1229 (Fla. 3d DCA 1992). However, other cases discuss whether the parties are "identical." See Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla. 1977); Holt v. Brown's Repair Serv., Inc., 780 So.2d 180, 182 (Fla. 2d DCA 2001). Because Sam Goodman has not argued this particular issue, and because the other factors necessary to apply the doctrine of collateral estoppel are not met, we do not decide this issue.