[PUBLISHED]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 9, 2006
THOMAS K. KAHN
CLERK

No. 05-10473

D. C. Docket No. 04-00037-CV-3-RV-EMT

CHARLES S. WINGARD,
ET AL.,

                                        Plaintiffs-Counter-
                                        Defendants-Appellants,

versus

EMERALD VENTURE FLORIDA
LLC, ET AL.,

                                        Defendants-Counter-
                                        Claimants-Appellees.

Appeal from the United States District Court
for the Northern District of Florida

**(February 9, 2006)**

Before DUBINA and MARCUS, Circuit Judges, and GOLDBERG*, Judge.

GOLDBERG, Judge:

_____

* Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

This diversity case concerns the scope of an easement that was subject to litigation in the Florida state courts over two decades ago. The case requires us to review the district court's grant of Appellees' motion for summary judgment, as well as the district court's denial of Appellants' motion for summary judgment, on the basis of the collateral estoppel effect of a prior state court decision. The district court held that the prior Florida case, Walters v. McCall, 450 So.2d 1139 (Fla. 1st DCA 1984), collaterally estopped Appellants from arguing that the easement as originally intended limited the number of lots into which the dominant parcel could be divided to nine ("the nine lots issue"). In addition, the district court held that collateral estoppel did not require the district court to accept Appellants' argument that renters were per se excluded from using the easement ("the renters issue"). Ultimately, the court found that the decision in Walters required entry of a final judgment for Appellees, and granted, sua sponte, full summary judgment in Appellees' favor, despite the more limited partial summary judgment motion that Appellees actually filed.

Appellants present the following four bases for reversal. First, the district court erred in finding that Walters did not compel judgment in Appellants' favor given that court's disposition of the renters issue. Second, the district court erred in holding that Walters precluded Appellants from arguing the nine lots issue.

Third, the contemplated development would make proper use of the easement, as originally intended, impossible. Appellants' final argument is that the district court erred in granting sua sponte final summary judgment when Appellee had only moved for partial summary judgment on the discrete issue of the <u>Walters</u> decision's treatment of the nine lots issue.

## BACKGROUND

### I. Creation of the Easement

The dispute, like the <u>Walters</u> case before it, arises out of the parties' conflicting accounts of the scope of a five-foot wide beach access easement, created in 1979, that runs through Appellants' property, from Appellees' parcel to the beach fronting the Gulf of Mexico. The parties agree that Appellants' predecessor in title granted the easement to Appellees' predecessor in title, and that the benefits and burdens of the easement extend to them as well. In 1979, Panhandle Realty Ventures, Inc. ("Panhandle") acquired the three parcels of land now at issue. A Panhandle developer named Hulsey[1] divided the northernmost parcel ("Parcel C"), which lay just north of Highway 30-A, into eight residential

---

[1] Both the district court opinion and the various briefs sporadically refer to the developer as "Husley" and "Hulsey." Since the disposition of the appeal rests on the interpretation of the preclusive effect of the <u>Walters</u> opinion, we will opt for "Hulsey," the name as rendered by that court. <u>See, e.g.</u>, <u>Walters</u>, 450 So.2d at 1142.

lots. Shortly thereafter, the four Parcel C lots that faced Highway 30-A were further divided into five lots, making a total of nine lots in Parcel C. Hulsey purchased five of the lots from Panhandle, and also commenced construction of a house on Parcel B, immediately south of Parcel C, across the highway.

Later in 1979, William Coleman made an inquiry at the Panhandle office regarding the possible purchase of Parcel A, which was situated immediately south of Parcels B and C, and through which the most direct route for beach access from those parcels runs. During the latter five months of 1979, Coleman and Panhandle negotiated for the purchase of Parcel A. Panhandle's representative, Butler, advised Coleman that Hulsey desired an easement to the beach. In September 1979, Coleman and Panhandle entered into a purchase agreement. In November 1979, Coleman asked Butler for a description of the Parcel C lots to be mentioned in the deed between Panhandle and Coleman, which Coleman was preparing. Butler told Coleman to include the descriptions of the parcels that had been contained in the original deed to Panhandle. The deed conveyed Parcel A to Coleman, and also reserved a five-foot walk easement along the easternmost five feet of the property, which was "reserved solely for the benefit of the owner or owners of" Parcels B and C. The deed was executed on December 12, 1979, and recorded on December 18, 1979.

In 1981, McCall approached Panhandle to discuss the purchase of Parcel C and the western half of Parcel B in order to construct a commercial campground. In March 1981, McCall, Panhandle, and Hulsey entered into an agreement for the sale of all but one of the lots on Parcel C.[2] In May 1981, Coleman noticed an initial clearing of Parcel C. He inquired about the clearing and was advised about McCall's plans to develop the area into a commercial campground whose patrons would utilize the easement to reach the beach. Coleman advised McCall verbally and in writing that the easement was intended to serve only eight to ten residential lots, as understood from his conversations with Hulsey and Butler about Panhandle's former modest development proposals.

## II.  The Prior Decision of <u>Walters v. McCall</u>

Coleman ultimately filed suit in state court seeking both a declaratory judgment with respect to the five-foot easement and an injunction prohibiting improper use thereof. The state trial court ruled against Coleman, determining that campsite patrons should be able to use the easement. On appeal, the <u>Walters</u> court found that the intent of the parties was that the easement was for residential purposes and not for commercial enterprises such as the campground then at issue:

---

[2]  Lot 8 was owned by Bell, who had acquired title to the lot in satisfaction of a debt Hulsey owed him. Concurrent to the McCall-Panhandle transaction, Bell sold lot 8 to McCall, leaving McCall as the owner of the entirety of Parcel C.

> The easement, rather, was created solely for the benefit of the owner or owners of Parcels B and C, and such use reasonably extends to their families, guests, and such persons' pets which, as the lower court concluded must be <u>carried</u> across the easement, but it does not include temporary use as part of a commercial enterprise by campground patrons.

<u>Walters</u>, 450 So.2d at 1143. The appellate court affirmed, however, the trial court's determination that no use restrictions burdened the dominant parcel. The appellate court, therefore, reversed in part and remanded the case for further proceedings consistent with its opinion. After the mandate issued, the trial court issued its order, which provided that:

> The five foot pedestrian walk easement across the east five feet of property now owned by the Plaintiffs . . . is a private easement which may be used <u>solely</u> by the owners of the property described in said deed as Parcel A and Parcel B and their families and guests, and which may not be used as part of a commercial enterprise. Persons entitled to use the easement may take their pets across the easement so long as the pets are <u>carried</u> by such persons.

<u>Wingard v. Emerald Venture Florida, LLC</u>, No. 3:04cv37/RV, slip op. at 4 (district court opinion citing to Doc. 45, ex. B, attach. 2).

### III. The Current Controversy

In 1997, Appellees purchased two parcels of property—namely, Parcel C and a nearby beachfront across Highway 30-A. The beachfront parcel was named SeaNest, and is comprised of seven lots. The lots are subject to covenants and restrictions that, <u>inter alia</u>, limit the number of rentals to fifteen per year. The

6

owners of the SeaNest lots have a beach access easement that runs through the other SeaNest lots.

Appellees are now in the process of developing Parcel C into a residential development they call "SeaNest Village." SeaNest Village consists of thirty-one residential lots, twenty-eight of which are located on Parcel C and have potential access to the beach easement. In addition, Appellees acknowledge that SeaNest Village "Phase II" anticipates an additional nine lots on adjoining property. Appellants worry that Phase II owners will also seek to access the beach via the easement, despite Appellees' assurances that Phase II lots have alternative beach access. Appellees anticipate that renters will occupy the residential lots from time to time, and contend that renters should have rights to use the easement that are coextensive with the owners' rights.

In February 2004, Appellants filed suit against Appellees in the U.S. District Court for the Northern District of Florida, seeking a declaratory judgment. Their second amended complaint sought judgment establishing the following legal conclusions: (1) the easement as originally intended served only nine lots on the dominant parcel; (2) the burden on the servient parcel may not be increased more than is reasonably necessary and was contemplated at the time of the easement; (3) renters may not use the easement and owners may not advise renters to use the

7

easement; (4) the proposed development plans make it impossible to prevent unauthorized use of the easement and thus constitutes abandonment; and (5) in the event the district court found no abandonment, Appellees should be required to create and pay for a method of limiting use of the easement to owners, family members, and guests of nine residences.

At the conclusion of discovery, Appellees moved for partial summary judgment on the discrete issue of whether Walters collaterally estops Appellants from arguing the nine lots issue. Appellants then moved for summary judgment on all issues, basing their arguments on both collateral estoppel and the facts uncovered in discovery.

On November 18, 2004, the district court noticed the parties that there would be a hearing on Appellants' summary judgment motion. The district court heard from both sides at a hearing on December 13, 2004. On December 27, 2004, the district court granted Appellees' motion for partial summary judgment and denied Appellants' motion for summary judgment. Specifically, the court held that Walters precluded a finding for Appellants on the nine lots issue. It also held that Walters did not address the renters issue, and therefore summary judgment for Appellants on those grounds would be inappropriate. It then entered final judgment in favor of the Appellees, disposing of the case completely. The district

8

court never noticed parties that it intended to rule sua sponte on issues outside the scope of the parties' respective summary judgment motions.

In this appeal, Appellants now seek reversal of the district court's grant of summary judgment in favor of Appellee and denial of summary judgment in favor of Appellants. In addition, Appellants seek reversal of the district court's sua sponte grant of full summary judgment in favor of Appellees because Appellants did not have an opportunity to respond to the prospect of dismissal of their action.

## **DISCUSSION**

The district court's summary judgment rulings involve the determination of whether collateral estoppel applies to this dispute, a matter that this court reviews de novo on appeal. See Quinn v. Monroe County, 330 F.3d 1320, 1328 (11th Cir. 2003). As a general matter, our review of the district court's rulings on the competing summary judgment motions is de novo, and we view all factual inferences in a light most favorable to the non-moving party. See Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

### I. Collateral Estoppel

"Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment

9

in foreclosing relitigation of an issue that has already been litigated and decided." Quinn, 330 F.3d at 1328. In a diversity case, federal courts will give preclusive effect to a judgment of a state court provided that two conditions are met: first, that the courts of the states from which the judgment emerged would do so themselves; and second, that the litigants have had a full and fair opportunity to litigate their claims in a prior state proceeding satisfying the applicable requirements of due process. See Shields v. BellSouth Adver. & Publ'g Co., 228 F.3d 1284, 1288 (11th Cir. 2000).

Under Florida law, collateral estoppel will preclude relitigation of an issue when "(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." Quinn, 330 F.3d at 1329; accord Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1131 (Fla. 4th DCA 2003). Moreover, the litigated issue must have been "a critical and necessary part of the prior determination." Goodman v. Aldrich & Ramsey Enter., Inc., 804 So.2d 544, 546 (Fla. 2d DCA 2002); Acadia Partners, L.P. v. Tompkins, 759 So.2d 732, 738 (Fla. 5th DCA 2000) (citing Dep't of Health & Rehabilitative Svcs v. B.J.M., 656 So.2d 906, 910 (Fla. 1995)). In this case, the parties do not dispute that they are in privity with the litigants in the Walters case. The disagreement centers on their differing

10

interpretations of what the Walters court actually decided.

### A. Walters Does Not Collaterally Estop Appellants from Arguing the Nine Lots Issue

Appellants appeal the district court's holding that collateral estoppel prevented Appellants from arguing that the predecessors in interest, in creating the easement, intended to limit to nine the number of residential lots into which the dominant Parcel C could be subdivided. Specifically, the district court concluded that because (1) the Appellants' privities argued that a numerical limitation existed, and (2) the Walters court "[a]t no point . . . suggest[ed] that use of the easement was limited to a particular number of residential users," Wingard, No. 3:04cv37/RV, slip op. at 6, Appellants are precluded from litigating the nine lots issue in this dispute. We must determine the extent to which "the particular matter [was] fully litigated and determined in a contest which result[ed] in a final decision," Rice-Lamar, 853 So.2d at 1131, of the Walters court. We hold that the district court was wrong to apply collateral estoppel to the nine lots issue because Walters simply did not decide that issue.

The Walters court faced the question of whether the easement was intended to provide access not only to residents of the dominant parcel, but to licensees lodging at a commercial campground as well. See Walters, 450 So.2d at 1142. The court examined the language of the deed that reserved the easement, which

11

stated that it was for the sole benefit of the "owner or owners" of the dominant parcel. Id. Considering such language to be ambiguous as to the exact scope of the easement, the court then embarked on the task of ascertaining "the legal extent of the right . . . from the intention of the parties, in light of the surrounding circumstances, at the time the easement was created." Id. Ultimately, the court reversed the trial court and found that "travel over the easement by patrons of the campground was not a use contemplated by the parties at the time the easement was created, and such travel constitutes an impermissible expansion of the scope of the easement beyond that intended by the parties." Id. at 1143.

In this case, the silence of the Walters court on the nine lots issue is determinative of its collateral estoppel effect. While it is true that in some instances a court may preclude the prospective relitigation of an issue without rendering an express, written ruling on that issue, the final decision's putative preclusive effect hinges on its representing a full consideration of a fully litigated issue. Walters' treatment of the nine lots issue falls far short of that standard.

Appellants concede that their predecessors in interest raised the nine lots issue during the Walters proceedings. However, that issue was raised only to rebut the Walters defendants' suggestion that a commercial campground was a permissible use. By contrast, despite their vague invocations of the Walters

12

record, Appellees never identify any time when the nine lots issue was subject to the full and searching examination that collateral estoppel requires. See Rice-Lamar, 853 So.2d at 1131; Acadia Partners, 759 So.2d at 738.

The district court nevertheless found that "the issue was briefed and argued on appeal." Wingard, No. 3:04cv37/RV, slip op. at 6. To support that finding, the district court noted that "[t]here was evidence in the record, such as Mr. Coleman's testimony, from which the court could have found such a restriction if it thought such a restriction existed." Id. (emphasis added). While it is undoubtedly true that the court could have made such a sweeping finding, it seems more likely that the Walters court, mindful of judicial restraint, avoided a broad and comprehensive laundry list of rights incident to the easement, and opted instead to resolve the case and controversy before it. See Mabson v. Christ, 140 So.2d 671, 672 (Fla. 1932) ("Neither is the rule [of collateral estoppel] applicable to issues, the trial of which rests within the discretion of the court, where that discretion was not exercised."). The nine lots issue was at best tangentially relevant to the issue of whether the easement was subject to commercial licensees, and Walters does not collaterally estop these or subsequent parties from litigating the nine lots issue in court.[3] Therefore, we reverse the district court's finding that

---

[3] Even if we construed Walters to address the nine lots issue, it still would not produce collateral estoppel in this case because that holding would not have been "a critical and necessary part of

13

Appellants are collaterally estopped from arguing the nine lots issue.

**B.** **Walters Does Not Collaterally Estop Appellees from Arguing the Renters Issue**

We must next address the district court's rejection of Appellants' collateral estoppel argument. Appellants appeal the district court's ruling that collateral estoppel <u>did not</u> bar Appellees from arguing that renters of units on Parcel C could, under both <u>Walters</u> and the express terms of the easement, use the easement. Appellants argue that the <u>Walters</u> court ruled on the inclusion <u>vel non</u> of renters by implication since the decision and subsequent mandate mention "non-owners"–a category of persons that includes, according to Appellants' interpretation, renters.

The district court was correct not to accord preclusive effect to the <u>Walters</u> decision on the renters issue. As noted above, collateral estoppel applies only when an identical issue, necessary to the disposition of the case, was decided in the prior decision. See <u>Goodman</u>, 804 So.2d at 546. It is beyond dispute that <u>Walters</u> explained the easement excluded non-owner use such as commercial enterprises. See 450 So.2d at 1143. <u>Walters</u> also stated that the use of the easement was limited to use "solely" by the owners of the dominant parcel, "and such use reasonably extends to their families, guests, and . . . pets." <u>Id.</u> In this

the prior determination." <u>Goodman</u>, 804 So.2d at 546.

14

case, however, Appellees do not argue that non-owner use was originally contemplated by the creating parties. Such an argument would be subject to collateral estoppel. Instead, Appellees argue that under the case of Wyatt v. Parket,128 So.2d 431, 434 (Fla. 2d DCA 1961), a "renter" steps into the shoes of the "owner" with respect to an easement that does not expressly provide otherwise. Therefore, the dispute centers on how to interpret the Walters decision's use of the limiting phrase "solely by the owners," 450 So. 2d at 1143, and not on that phrase's applicability to this dispute.

The district court looked to Florida real property law and discovered that it is far from obvious, despite contrary assertions by Appellants, that the language "solely by the owners" excludes renter uses. See Wingard, No. 3:04cv37/RV, slip op. at 7. Since Wyatt was a well-settled precedent in Florida real property law, it may be assumed that a Florida appellate court would distinguish that case if it desired to exclude renters from the purview of an easement. Instead, there is no evidence that the Walters court, by issuing its ruling and mandate, intended to abrogate or distinguish the Wyatt ruling.

Moreover, and contrary to Appellants' suggestion, permitting non-owner use by short-term renters does not divest the term "solely" of all meaning. In ruling that the easement was for use solely by owners, see Walters, 450 So.2d at

15

1143, the <u>Walters</u> court was not, it may be presumed, intending to distinguish renters from owners, but owners from commercial users.[4]  After all, it is of no small significance that the distinction between use by a commercial enterprise and owner use was the crux of the <u>Walters</u> case.  Because the <u>Walters</u> case did not purport to adjudicate whether renters could use the easement, the district court correctly held that <u>Walters</u> did not preclude Appellees from presenting evidence on the renters issue.  Therefore, we affirm the district court's denial of Appellants' summary judgment motion.

## II.  Constructive Abandonment of the Easement

As noted above, Appellants urged the district court–and now urges this Court–(1) to declare the original intention of the parties was to limit the scope of the easement to nine residential lots; and (2) to enjoin access to the easement or to find that the easement has been constructively abandoned in light of what they consider an unreasonable increase in use that renders the original intention impossible to effectuate.  However, since we have found that collateral estoppel does not bar inquiry into the parties' intentions regarding the scope of the easement, we consider it impossible to pass on whether the contemplated use

---

[4]  Appellants do not claim that renting should be considered a "use as part of a commercial enterprise" under the framework set forth in <u>Walters</u>.  <u>See</u> <u>Wingard</u>, No. 3:04cv37/RV, slip op. at 7 n.2.

16

would exceed such as-yet-undetermined scope.[5]  See Urfirer v. Cornfield, 408 F.3d 710, 724-25 (11th Cir. 2005) (remanding after reversing district court's holding that collateral estoppel barred the plaintiff's claims).  We accordingly remand to the district court for determination of the easement's scope and consideration of whether the proposed SeaNest Village use is contemplated by the easement as originally intended.

## III.  The District Court's Sua Sponte Grant of Full Summary Judgment

Since we reverse the district court's finding that Walters precludes Appellants from litigating the scope of the easement and remand for further consideration, Appellants' objections to the sua sponte grant of full summary judgment are mooted.  We note, however, that the issues remanded to the district court are questions of fact, as to which this court has repeatedly held that sua sponte summary judgment, without notice to the non-moving party, is wrought with the potential for violations of litigants' procedural rights.  See Massey v. Cong. Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997) (noting that Fed.R.Civ.P. 56(c)'s ten-day notice requirement is "not an unimportant

---

[5]  It is entirely possible that a district court, having erroneously found a litigant collaterally estopped from presenting an otherwise meritorious argument, may ultimately find that argument persuasive on remand.  Therefore, it would be premature and improper for a court of appeals to exercise its de novo review since the district court has not yet ruled on the merits of the underlying summary judgment motions.

technicality, but a vital procedural safeguard"); but see Artistic Entm't v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003) (observing that sua sponte summary judgment may be appropriate when litigants have fully developed the evidentiary record and questions of law predominate). Since factual disputes predominate this dispute as remanded to the district court, the dispute is more analogous to Massey than Artistic Entertainment and accordingly, the district court should ensure that proper notice is given to any party against whom summary judgment is being considered.

## CONCLUSION

We **AFFIRM** the district court's holding that collateral estoppel does not determine the renters issue. We **REVERSE** the district court's holding that collateral estoppel precludes Appellants' presenting the nine lots issue to the court. Accordingly, we hereby **VACATE** the district court's order entering judgment in favor of Appellees, and we **REMAND** the proceedings to the district court to determine the easement's scope and the remedy, if any, to which Appellants are entitled.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**